**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ZAFTR INC. n/k/a SVELLA FINANCIAL CORP. | : <br> : <br> : CIVIL ACTION <br> : <br> : NO. 21-2177 |
| Plaintiff, | : |
| v. | : JURY TRIAL DEMANDED <br> : |
| KEVIN JAMESON LAWRENCE, ESQUIRE; BVFR & ASSOCIATES, LLC; JOHN KIRK, ESQUIRE AND KIRK LAW PLLC | : <br> : <br> : <br> : <br> : |
| Defendants. | : <br> : <br> : |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS JOHN KIRK, ESQUIRE AND KIRK LAW PLLC'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT .................................................................1

II.     STATEMENT OF FACTS .......................................................................3

III.    ARGUMENT ..........................................................................................5

    A.  Legal Standard. ...............................................................................5

        1.  Rule 12(b)(6).......................................................................5

        2.  Rule 9(b) .............................................................................6

    B.  Contrary To The Kirk Defendants' Contentions, Plaintiff's RICO Claims
Have Been Adequately Pled And Have Sufficiently Alleged A Pattern Of
Racketeering Activity. ....................................................................7

        1.  Contrary To The Kirk Defendants' Contentions, Plaintiff Has
Adequately Pled A "Pattern" Of Racketeering Activity.............................9

            a.  Plaintiff Has Pled Its RICO Claims Against The Kirk
Defendants With Sufficient Specificity To Meet Rule
9(b)'s Pleading Requirements........................................10

            b.  Plaintiff Has Adequately Pled A Pattern Of Racketeering
Activity Sufficient To Meet RICO's Continuity
Requirement....................................................................13

        2.  Contrary To The Kirk Defendants' Contentions, Plaintiff Has
Sufficiently Pled That The Kirk Defendants Exercised Control
Over The RICO Enterprise. ........................................17

        3.  Contrary To The Kirk Defendants' Contentions, Plaintiff Has
Sufficiently Pled A Separate Injury Due To The Kirk Defendants'
Investment Of Racketeering Proceeds Into The Enterprise......................19

        4.  Contrary To The Kirk Defendants' Contentions, Plaintiff Has
Sufficiently Pled A RICO Claim Under Section 1962(d) Because It
Has Adequately Alleged Claims Under Section 1962(a), (b), And
(c). ...........................................................................21

    C.  Contrary To The Kirk Defendants' Contentions, Zaftr Has Appropriately
Pled A Claim For Unjust Enrichment. ...............................22

    D.  Contrary To The Kirk Defendants' Contentions, Zaftr Has Appropriately
Pled A Claim For Conversion.............................................24

    E.  Contrary To The Kirk Defendants' Contentions, Zaftr Has Sufficiently
Pled Its Fraudulent Misrepresentation/Omission Claim. ......................26

IV.     CONCLUSION....................................................................................28

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................................................5

*Banks v, Wolk,*
918 F.2d 418 (3d. Cir. 1990)...................................................................................15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................................5

*Bell v. Money Resource Corp.,*
Civ. No. 08-639, 2009 WL 382478 (E.D. Pa. Feb. 13, 2009) ................................25

*Benevento v. LifeUSA Holding, Inc.,*
181 F.R.D. 298 (E.D. Pa. 1998)....................................................................6, 10, 27

*Bonavitacola Elec. Contr., Inc. v. Boro Developers, Inc.,*
2002 U.S. Dist. LEXIS 20245 .................................................................................22

*Brock v. Thomas,*
782 F. Supp. 2d 133 (E.D. Pa. 2011) ..................................................................8, 21

*Broederdorf v. Bacheler,*
129 F.Supp.3d 182 (E.D. Pa. 2015) .................................................................. passim

*Connelly v. Lane Const. Corp.,*
809 F.3d 780 (3d Cir. 2016).....................................................................................5

*Constitution Bank v. DiMarco,*
155 B.R. 913 (E.D.Pa.1993) ...............................................................................6, 27

*Craftmatic Securities Litigation v. Kraftsow,*
890 F.2d 628 (3d Cir.1989).................................................................................6, 10

*Denny v. Carey,*
72 F.R.D. 574 (E.D. Pa. 1976).................................................................................6

*Fowler v. UPMC Shadyside,*
578 F.3d 203 (3d Cir. 2009).....................................................................................5

*Francis J. Bernhardt, III, P.C. v. Needleman,*
705 A.2d 875 (Pa. Super. 1997)..............................................................................25

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)....................................................14, 16

*Heintz Corp. v. Electro Methods*,
    1995 U.S. Dist. LEXIS 8346 (E.D. Pa. June 15, 1995) ............................................22

*Hershey Foods Corp. v. Ralph Chapek, Inc.*,
    828 F.2d 989 (3d Cir.1987)........................................................................................23

*Independent Enterp., Inc. v. Pittsburgh Water & Sewer Auth.*,
    103 F.3d 1165 (3d Cir. 1997) ....................................................................................23

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    No. 09-CV-730, 2013 WL 5761202 (E.D. Pa. Oct. 23, 2013) ..............................10

*In re Flonase Antitrust Litig.*,
    692 F. Supp. 2d 524 (E.D. Pa. 2010) .......................................................................23

*Jatras v. Bank of Am. Corp.*,
    2010 U.S. Dist. LEXIS 40074 (D.N.J. Apr. 22, 2010) ............................................22

*Killian v. McCulloch*,
    850 F.Supp. 1239 (3d Cir. 1994) ..............................................................................27

*Klapper v. Commonwealth Realty Trust*,
    657 F. Supp. 948 (D. Del. 1987)...............................................................................22

*Leonard A. Feinberg, Inc. v. Cent. Asia Capital Corp., Ltd.*,
    974 F.Supp. 822 (E.D. Pa. 1997)..............................................................................24

*Liberty Mutual Insurance Company v. Gemma*,
    301 F.Supp.3d 523 (W.D. Pa. 2018).........................................................................26

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993)........................................................................................19

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)........................................................................................5

*Rehkop v. Berwick Healthcare Corp.*,
    695 F.3d 285 (3d Cir. 1996)................................................................................19, 21

*Republic Environmental Systems (PA), Inc. v. Reichhold Chemicals, Inc.*,
    154 F.R.D. 130 (E.D.Pa. 1994)..................................................................................6

*Rose v. Bartle*,
    871 F.2d 331 (3d Cir. 1989)............................................................................8, 20, 21, 22

*Saporito v. Combustion Engineering Inc.*,
   843 F.2d 666 (3d Cir. 1988)..................................................................................6

*Sedima, S.P.R.L. v. Imrex Co*.,
   473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)............................................8

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp*.,
   742 F.2d 786 (3d Cir. 1984)..................................................................................6

*Stoss v. Singer Financial Corp.*,
   Civ A. No. 08-5968, 2010 WL 678115 (E.D. Pa. Feb. 24, 2010) ...........................................7

*Sudofsky v. JDC Inc.*,
   No. Civ.A. 03–CV–1491, 2003 WL 22358448 (E.D. Pa. Sept. 8, 2003) .........................24, 26

*Swistock v. Jones*,
   884 F.2d 755 (3d Cir.1989)..................................................................................14

*T.D. Melchiorre, Inc. v. Victory Foodservice Distributors Corp.*,
   No. 3:18-CV-1933, 2021 WL 426493 (M.D. Pa. Feb. 8, 2021)........................................25, 27

*Tabas v. Tabas*,
   47 F.3d 1280 (3d. Cir. 1995)............................................................ *passim*

*Tallely v. Halpern ex rel. Est. of Winderman*,
   No. CIV.A.05-4184, 2005 WL 2002611 (E.D. Pa. Aug. 16, 2005) ....................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..........................................................................................10

*Tierney & Ptnrs, Inc. v. Rockman*,
   274 F. Supp. 2d 693 (E.D. Pa. 2003) ..................................................................22

*United States v. Kensington Hospital*,
   760 F.Supp. 1120 (E.D.Pa. 1991) ..................................................................6, 23

*United States v. Turkette*,
   452 U.S. 576 (1981)..........................................................................................18

*Vavro v. Albers*,
   No. 2:05CV321, 2006 WL 2547350 (W.D. Pa. 2006) .........................................25

*Walther v. Patel*,
   No. CIV.A. 10-706, 2011 WL 382752 (E.D. Pa. Feb. 4, 2011) ...........................14

**Statutes**

18 U.S.C. § 1631(1)..........................................................................................14

18 U.S.C. § 1961(4) ........................................................................................................18

18 U.S.C. § 1962(a) ..................................................................................................*passim*

18 U.S.C. § 1962(b) ..................................................................................................*passim*

18 U.S.C. § 1962(c) ..................................................................................................*passim*

18 U.S.C. § 1962(d) ..................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ..............................................................................................6, 27

Fed. R. Civ. P. 8(d)(2) ..................................................................................................23

Fed. R. Civ. P. 8(d)(3) ..................................................................................................23

Fed. R. Civ. P. 9(b) ..................................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ............................................................................................*passim*

Fed. R. Civ. P. 1962(a) ..............................................................................................8, 22

Fed. R. Civ. P. 1962(b) ..............................................................................................8, 22

Fed. R. Civ. P. 1962(c) ..............................................................................................8, 21

Fed. R. Civ. P. 1964(c) ....................................................................................................8

Restatement (Second) of Torts § 222A(1) (1965) ........................................................25

160603.00602/126505172v.1

Plaintiff Zaftr Inc. ("Plaintiff"), by and through its undersigned counsel, submits this Memorandum of Law in Opposition to the Motion to Dismiss (the "Motion"), filed by Defendants John Kirk, Esquire ("Kirk") and Kirk Law PLLC's ("Kirk Law") (collectively the "Kirk Defendants").

## I.    PRELIMINARY STATEMENT

This matter arises out of a scheme to defraud Zaftr out of millions of dollars through a series of sham transactions for the sale of Bitcoin (BTC).  As a result of Defendants' fraud and breaches of the parties' agreements, Zaftr lost not only millions of dollars in funds it paid to Defendants for the purchase of BTC that Zaftr never received, but millions of dollars more in hedging losses, lost business opportunities and profit.  In their Motion, the Kirk Defendants argue that Plaintiff's RICO claims (Count VIII), unjust enrichment claim (Count III), conversion claim (Count IV) and fraudulent misrepresentation/omission claim (Count V), should be dismissed for lack of sufficient specificity (Rule 9(b)) and for legal insufficiency (Rule 12(b)(6)).  For the following reasons, the Kirk Defendants' Motion lacks merit and should be denied in its entirety.

First, contrary to the Kirk Defendants' contentions, Plaintiff's RICO claims have all been properly pled.  Zaftr's Complaint provides numerous specific details regarding the Kirk Defendants' fraudulent misrepresentations and omissions, which clearly satisfy the standards for pleading RICO claims with sufficient specificity.  Zaftr's Complaint further sets forth sufficient allegations to establish both "close-ended continuity" and "open-ended continuity" with respect to the Kirk Defendants' pattern of racketeering activity. Zaftr's Complaint also has sufficiently alleged the Kirk Defendants' control over the RICO enterprise, and that the Kirk Defendants have used the proceeds from the fraudulent sales of BTC to invest in the RICO enterprise.  Additionally,

1

because Zaftr's Complaint has sufficiently alleged RICO claims under 18 U.S.C. § 1962(a), (b), and (c), it has properly alleged a claim under 18 U.S.C. § 1962(d).

Second, Zaftr has properly pled a claim for unjust enrichment in its Complaint.  While the Kirk Defendants argue that a plaintiff may not simultaneously recover under theories of breach of contract and unjust enrichment, the Federal Rules of Civil Procedure plainly permit pleading in the alternative with respect to inconsistent forms of relief.  Courts within the Third Circuit have time and again permitted a plaintiff to pursue alternative theories of recovery involving claims for both breach of contract and unjust enrichment.  Especially where, as here, all of the claims share the same factual basis, and the claims comprise alternative theories of recovery based on the same factual circumstances, a plaintiff is entitled to maintain such claims despite the inconsistent forms of relief sought.  As courts within this Circuit have held, to rule otherwise would improperly limit a plaintiff's avenues of recovery at the pleadings stage where the underlying facts and events for all of the claims are the same.  As such, Zaftr has appropriately pled a claim for unjust enrichment notwithstanding its breach of contract claims against the Kirk Defendants.

Third, Zaftr has properly pled a claim for conversion in the Complaint.  The Kirk Defendants argue that Zaftr's conversion claim should be dismissed because the property in question is "intangible" cryptocurrency, and because Zaftr has also asserted claims for breach of contract.  Neither argument has merit.   Contrary to the Kirk Defendants' assertions, Plaintiff has alleged that the Kirk Defendants have converted Plaintiff's *money* (i.e., its United States Dollars) that it paid to the Kirk Defendants for BTC that was never delivered, which can properly be the subject of a conversion claim.  Plaintiff is also clearly entitled to plead inconsistent forms of relief, including claims for both breach of contract and conversion, and is not required at this stage of the

2

proceedings to select a single type of relief to pursue.  As such, Plaintiff has properly pled a conversion claim.

Fourth, Zaftr has properly pled a claim for fraudulent misrepresentation/omission in the Complaint.  Contrary to the Kirk Defendants' contentions, Zaftr has alleged that Kirk, together with his law firm Kirk Law PLLC, was involved in, and, in fact, an integral part of, the fraud.  The Complaint specifically details the Kirk Defendants' fraudulent misrepresentations and omissions that were made in an effort to keep Zaftr engaged in the escalating sham transactions.  The Complaint further specifies that the Kirk Defendants committed these fraudulent misrepresentations and omissions knowing that they were false, and knowing that they would induce Zaftr to enter into the Defendants' sham transactions.  As a direct and proximate result of its reliance on these fraudulent misrepresentations and omissions, Zaftr has alleged in its Complaint that it has suffered damages in an amount in excess of $32,826,500.00. The Kirk Defendants' arguments that the Complaint does not allege specific fraudulent conduct on the part of these Defendants is therefore meritless.

Because Plaintiff's Complaint pleads viable claims for RICO violations, unjust enrichment, conversion, and fraudulent misrepresentation/omission, the Kirk Defendants' Motion to dismiss should be denied in its entirety.

## II.    STATEMENT OF FACTS

As discussed in greater detail in the Complaint, this matter arises out of a scheme to defraud Zaftr out of millions of dollars through a series of sham transactions for the sale of Bitcoin (BTC). Compl. ¶ 1.  Defendant Kevin Jameson Lawrence approached Zaftr, claiming he had previously brokered successful agreements for the sale and purchase of BTC.  *Id*.  Lawrence claimed he had a relationship with a third-party BTC seller, James Smith, and represented he was appointed as

3

mandate with the authority to act and negotiate a deal on behalf of the seller. *Id*.  To assist and add an air of legitimacy to the transaction, Lawrence, an attorney himself, involved attorney John Kirk as counsel for Lawrence and BVFR.  *Id*.  Together, they presented a purchase agreement under which Zaftr would send the purchase funds to Kirk, who would hold the funds in escrow.  *Id*.  Kirk would notify Lawrence that the funds were received, and Lawrence would in turn notify Smith that he could send Zaftr the BTC.  *Id*.  Once the BTC was delivered, Kirk would release the funds to Lawrence, who would pay Smith.  *Id*.

To ensure Zaftr would participate in the agreement, Lawrence claimed he had worked with Smith before and had thoroughly vetted him.  Compl. ¶ 2.  Although he would not allow Zaftr to have any direct contact with Smith, Lawrence, through Kirk, provided Zaftr with a copy of Smith's passport and attested to the validity of such copy and its accurate representation of Smith.  Compl. ¶¶ 2; 21.

Once the agreement was signed, Zaftr sent the required funds to Kirk and awaited delivery of the BTC.  Compl. ¶ 3.  Lawrence and Kirk offered explanations and excuses for the delay, but the BTC never came.  *Id*. Thus began a string of further fraudulent misrepresentations giving rise to new agreements that Lawrence and Kirk would offer up in an effort to continue to defraud Zaftr. *Id*.  Their scheme grew to include international banks and another escrow attorney, whose credentials were also falsified.  *Id*.  As a result of Defendants' escalating fraud, Zaftr lost not only millions of dollars in funds paid to Defendants to purchase BTC that Zaftr never received, but millions of dollars more in hedging losses, lost business opportunities and profit.  *Id*.  Zaftr subsequently brought this action against Defendants to recover the damages it has sustained due to Defendants' wrongful conduct and their breaches of the parties' Agreements.  *Id*.

4

## III.     ARGUMENT

### A.  <u>Legal Standard.</u>

#### 1.  **Rule 12(b)(6)**

To survive dismissal under Federal Rule of Civil Procedure Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

"[A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "First, the factual and legal elements of a claim should be separated."  *Id*. "The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id*. at 210-211.  "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211. "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Id*. "A complaint has to 'show' such an entitlement with its facts." *Id*. (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008)).  "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Fowler*, 578 F.3d at 211 (citing *Iqbal*, 129 S.Ct. at 1949).

## 2.  Rule 9(b)

With respect to pleading fraud, Federal Rule of Civil Procedure 9(b) provides as follows:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. P. 9(b).

"Bearing in mind that Rule 9(b) must be harmonized with Rule 8(a)(2) which requires 'a short and plain statement of the claim showing that the pleader is entitled to relief,' the Third Circuit has cautioned that focusing exclusively on Rule 9(b)'s 'particularity' language is too narrow an approach and subjects the allegations of fraud to too strict a scrutiny." *Benevento v. LifeUSA Holding, Inc.*, 181 F.R.D. 298, 300 (E.D. Pa. 1998) (citing *Constitution Bank*, 155 B.R. at 918; *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *Republic Environmental Systems, (PA), Inc. v. Reichhold Chemicals, Inc.*, 154 F.R.D. 130, 131 (E.D.Pa. 1994)).  "In other words, Rule 9(b) was not intended to be so strict as to require a plaintiff to know all the details regarding the alleged fraud before fraud may be plead." *Benevento*, 181 F.R.D. at 300 (citing *Republic*, 154 F.R.D. at 131; *United States v. Kensington Hospital*, 760 F.Supp. 1120, 1125–26 (E.D.Pa. 1991)). "Thus, Rule 9(b) requires plaintiffs to plead the circumstances of the alleged fraud with particularity to ensure that defendant is placed on notice of the 'precise misconduct with which it is charged, and to safeguard defendant against spurious charges of fraud.'" *Benevento*, 181 F.R.D. at 300-301 (*citing Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir.1989) (quoting *Seville*, 742 F.2d at 791)).

"If the defendant can prepare an adequate answer to the complaint, the requirements of Rule 9(b) have been met." *Benevento*, 181 F.R.D. at 301 (citing *Republic*, 154 F.R.D. at 132; *Denny v. Carey*, 72 F.R.D. 574, 578 (E.D. Pa. 1976)).  "Furthermore, courts have relaxed Rule 9(b)'s particularity requirement when factual information is peculiarly within the defendant's

6

knowledge or control." *Benevento*, 181 F.R.D. at 301 (*citing Craftmatic*, 890 F.2d at 645; *Saporito v. Combustion Engineering Inc.*, 843 F.2d 666, 675 (3d Cir. 1988)).  *See also Broederdorf v. Bacheler*, 129 F.Supp.3d 182, 198 n.11 (E.D. Pa. 2015) (declining to dismiss fraudulent inducement claim where the plaintiff "provided two agreements which [the defendant] allegedly signed that are dated… [which] provide[d] the 'who, what, when, and where' that [the defendant] claims is missing from the complaint.").

### B.  Contrary To The Kirk Defendants' Contentions, Plaintiff's RICO Claims Have Been Adequately Pled And Have Sufficiently Alleged A Pattern Of Racketeering Activity.

The Kirk Defendants allege that Plaintiff's civil RICO claims should be dismissed "for Insufficient Specificity and Failure to Adequately Plead a Pattern of Racketeering Activity." Motion at 8.  The Kirk Defendants provide four grounds for this assertion.  In particular, the Kirk Defendants claim that Plaintiff has failed to: (1) plead a "pattern" of racketeering activity; (2) demonstrate a separate injury due to the Kirk Defendants' control over the alleged enterprise; (3) demonstrate a separate injury due to the Kirk Defendants' investment of racketeering proceeds in the alleged enterprise; and (4) plead viable claims under Section 1962(a), (b) and (c) to support a claim under Section 1962(d).  Motion at 9-18.  As set forth below, the Kirk Defendants are mistaken; Plaintiff's RICO claims are all viable and appropriately pled.

"To plead a claim for relief under Section 1962(a), a plaintiff must allege that the defendant has (1) received money from a pattern of racketeering activity, (2) invested that money in an enterprise, and (3) that the enterprise affected interstate [commerce]." *Stoss v. Singer Financial Corp.*, Civ A. No. 08-5968, 2010 WL 678115, *4 (E.D. Pa. Feb. 24, 2010) (citing 18 U.S.C. § 1962(a)).  Specifically, "[s]ection 1962(a) prohibits 'any person who has received any income derived . . . from a pattern of racketeering activity' from using that money to acquire or operate any enterprise engaged in interstate commerce." *Tabas*, 47 F.3d at 1289.

7

To state a cause of action under Section 1962(b), the plaintiff must allege that the defendant has employed racketeering conduct or proceeds to "acquire or maintain, directly or indirectly, any interest in or control any enterprise affecting interstate commerce." *Stoss v. Singer Financial Corp.*, Civ A. No. 08-5968, 2010 WL 678115 (E.D. Pa. Feb. 24, 2010) (*citing* 18 U.S.C. § 1962(b)). "Section 1962(b) prohibits any person from acquiring, maintaining an interest in, or controlling any such enterprise 'through a pattern of racketeering activity.'" *Tabas* 47 F.3d at 1289.

With respect to Section 1962(c), it "prohibits any person employed by or associated with an enterprise engaged in interstate commerce from conducting or participating in the affairs of the enterprise through 'a pattern of racketeering activity.'" *Id*. Notably, section 1962(c) does not even require proof of a separate injury. *See id*. at 1291 ("If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions [§ 1962(a)–(c)], and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c).") (citing *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)). Indeed, with respect to a RICO claim under Section 1962(c), "[t]here is no room in the statutory language for an additional, amorphous 'racketeering injury' requirement." *Tabas* 47 F.3d at 1291.

Additionally, to state a claim for RICO conspiracy under section 1962(d),  "a plaintiff must allege that Defendant intended to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." *Brock v. Thomas*, 782 F. Supp. 2d 133, 142 (E.D. Pa. 2011) (citation and quotations omitted).  A plaintiff must also allege: "(1) agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were part of a pattern of racketeering

8

activity conducted in such a way as to violate section 1962(a), (b), or (c)."  *See Rose*, 871 F.2d at

366 (citation and quotations omitted).

Contrary to the Kirk Defendants' overly narrow and restrictive characterizations of RICO's

pleading requirements, "RICO is to be read broadly."  *Tabas* 47 F.3d at 1291 (citing *Sedima,*, 473

U.S. at " at 497–98.  "This is the lesson not only of Congress' self-consciously expansive language

and overall approach, but also of its express admonition that RICO is to be liberally construed to

effectuate its remedial purposes."  *Tabas* 47 F.3d at 1291.  "The clear implication of this language

is that the ambit of RICO may encompass a 'legitimate' businessman who regularly conducts his

business through illegitimate means, that is, who repeatedly defrauds those with whom he deals

and in the process commits predicate acts, for instance by using the postal service as a means of

accomplishing his scheme." *Id*. at 1293.

As set forth below, Plaintiff has sufficiently pled RICO claims against the Kirk Defendants

under 18 U.S.C. § 1962(a), (b), (c) and (d).

1.  **Contrary To The Kirk Defendants' Contentions, Plaintiff Has Adequately Pled A "Pattern" Of Racketeering Activity.**

The Kirk Defendants contend that "Plaintiff has failed [to] plead the necessary predicate

acts with enough detail to support its RICO claim against the Kirk Defendants."  Motion at 10.

The Kirk Defendants further contend that Plaintiff "has not sufficiently alleged a *pattern* of

racketeering activity… by showing either 'close-ended continuity' or 'open-ended continuity.'"

*Id*. at 11 (emphasis in original).  Neither assertion has merit.  Zaftr's Complaint provides numerous

specific details regarding the Kirk Defendants' fraudulent misrepresentations and omissions,

which clearly satisfy the standards for pleading RICO claims with sufficient specificity.  Zaftr's

Complaint also sets forth sufficient allegations to establish both "close-ended continuity" and

9

"open-ended continuity" with respect to the Kirk Defendants' pattern of racketeering activity.  As

such, the Kirk Defendants' Motion should be denied.

> a. <u>Plaintiff Has Pled Its RICO Claims Against The Kirk Defendants With Sufficient Specificity To Meet Rule 9(b)'s Pleading Requirements.</u>

While Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement,

the Third Circuit Court of Appeals has noted that courts must be sensitive when applying Rule

9(b) before discovery, as it "may permit sophisticated defrauders to successfully conceal the details

of their fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989).  Further, this

standard is relaxed when the factual information is within the defendant's knowledge or control.

*Id.*  "While it will usually be necessary to plead the 'time, place and content of the

misrepresentation and damages' to satisfy the specificity requirement of Rule 9(b), all that is

required is to put the defendant on sufficient notice of the claims to which a response is necessary."

*Benevento v. LifeUSA Holding, Inc.*, 181 F.R.D. 298, 301 (E.D. Pa. 1998) (internal citations

omitted).  A plaintiff meets the requirements of Rule 9(b): "[i]f the defendant can prepare an

adequate answer to the complaint." *Id.* at 301.  Thus, a plaintiff can satisfy the Rule 9(b) pleading

standard by "inject[ing] precision or some measure of substantiation into a fraud allegation." *In

re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 09-CV-730, 2013 WL 5761202, at *8

(E.D. Pa. Oct. 23, 2013).

Here, Zaftr has plainly met this standard.  The Kirk Defendants point to select allegations

in the Complaint, suggesting that Zaftr only alleges general "acts of wire fraud."  Motion at 10.

This argument, however, ignores the extensive and specific allegations raised in the Complaint

and incorporated into each Count of the Complaint, including Plaintiff's RICO claims in Count

VIII.  As the Supreme Court has held, "courts must consider the complaint in its entirety, as well

as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions." *Tellabs, Inc.*

10

*v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007).  "The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id*. (emphasis in original).

Zaftr's Complaint details specific instances of fraudulent misrepresentations and omissions by the Kirk Defendants during the course of Defendants' fraudulent scheme.  First, Plaintiff has alleged that: "Lawrence, ***through Kirk***, provided Zaftr with a copy of Smith's passport as part of Zaftr's due diligence."  Compl. ¶ 21 (emphasis added).  Plaintiff subsequently learned that this passport "was, in fact, fraudulent; the James Smith represented in the passport does not exist; and the photograph of the individual represented in the passport has been used in other fraudulent activity, namely online dating scams." *Id*. ¶ 62.  Plaintiff has alleged that this fraudulent passport, which Kirk provided to Plaintiff, "induced Plaintiff into entering into the BTC transactions with Defendants." *Id*. ¶ 74.

Second, Plaintiff has alleged that, after Plaintiff paid Defendants for the first tranche of 200 BTC (the "August 2020 Tranche") that was never delivered to Plaintiff, "***Kirk*** and Lawrence explained that the failure to provide the Bitcoin was purportedly the result of a timing issue with another party in a separate transaction."  Compl. ¶ 26 (emphasis added).  As a result of this misrepresentation as well as others by the Kirk Defendants, Plaintiff continued to pay Defendants millions of dollars more for additional tranches of BTC that Defendants never delivered. *Id*. ¶¶ 31-67.

Third, Plaintiff has alleged that, although "Kirk advised Plaintiff that he had never communicated directly with Smith or BBT," he confirmed that he "had been involved in a prior transaction where Smith had allegedly delivered BTC on short notice."  Compl. ¶ 53.  Plaintiff was therefore misled by Kirk into believing that the transactions with Defendants were not

11

fraudulent because Kirk had previously participated in a successful BTC transaction with at least one of the international third parties involved in Defendants' fraudulent scheme.

Taken together, the allegations in the Complaint set forth that the Kirk Defendants were instrumental in perpetrating the scheme in which Zaftr was defrauded out of millions of dollars for BTC that it never received from Defendants.  The Kirk Defendants were not only parties to the agreements in question; they served as the conduit through which Zaftr paid Defendants for the BTC that Defendants never provided to Plaintiff.  *See* Compl. at ¶¶ 13, 16, 18, 20, 31.  To facilitate these fraudulent transactions, Kirk served as BVFR's counsel and participated in the communications with Zaftr and Lawrence. *See id*. at ¶ 16, 22.

The Complaint further alleges that the Kirk Defendants were directly involved with the actual sale procedure in each of the fraudulent transactions.  On August 25, 2020, Zaftr wired funds to Kirk for the purchase of BTC.  *See* Compl. at ¶ 25.  When Zaftr never received the BTC from the first transaction, Kirk falsely claimed that the failure to deliver BTC was the result of a timing issue with a separate transaction unrelated to Zaftr.  *See id*. at ¶ 26.  The parties then entered into a second agreement, with Defendants Kirk and Kirk Law again acting as Lawrence and BVFR's counsel.  *See* Compl. at ¶ 31.  When Defendants again failed to deliver the promised BTC that Zaftr paid for but never received, the parties entered into a *third* agreement with Kirk serving as counsel once again for Lawrence and BVFR.  *See id*. at ¶ 41. Under this new agreement, on October 23, 2020, Zaftr wired funds directly to Kirk who then sent the funds to an international third party (OCBC). *See id*. at ¶¶ 43-44.

The Kirk Defendants also misrepresented "that Kirk supposedly had been involved in a prior transaction where Smith had allegedly delivered BTC on short notice." Compl. at ¶ 53. Yet the individual whom Kirk was purporting to be Smith, Zaftr later learned was fictitious.  *See id*. at

¶ 62 ("the James Smith represented in the passport does not exist; and the photograph of the individual represented in the passport has been used in other fraudulent activity, namely online dating scams.").

In addition to the specific allegations in the Complaint that set forth the Kirk Defendants' role and misrepresentations/omissions in connection with the fraudulent scheme, Zaftr has attached the various documents and agreements that served as the basis of the transactions between Zaftr and Defendants. *See* Compl. at Ex. A, Ex. B, Ex. C, Ex. E, and Ex. F. These agreements, together with all of the detailed allegations in the Complaint, are more than sufficient to satisfy Rule 9(b)'s pleading standards.  *See Broederdorf v. Bacheler*, 129 F.Supp.3d 182, 198 n.11 (E.D. Pa. 2015) (declining to dismiss fraudulent inducement claim where the plaintiff "provided two agreements which [the defendant] allegedly signed that are dated… [which] provide[d] the 'who, what, when, and where' that [the defendant] claims is missing from the complaint."). Zaftr has pled a course of conduct that is not only detailed in its timeframe and individuals involved, but is further supported by the various agreements appended to the Complaint. This level of precision and specificity is sufficient to meet the pleading requirements of Rule 9(b).

      b.  <u>Plaintiff Has Adequately Pled A Pattern Of Racketeering Activity Sufficient To Meet RICO's Continuity Requirement.</u>

The Kirk Defendants argue that Zaftr has failed to satisfy the "continuity test" requiring: (1) "a closed period of repeated conduct," or (2) "past conduct that by its nature projects into the future with a threat of repetition."  Motion at 11-12.  The Kirk Defendants' contentions are without merit.  The allegations in the Complaint are sufficient to satisfy the "continuity test" for Plaintiff's RICO claims.

A "pattern" requires "at least two acts of racketeering activity" which occur within a ten-year period. *Tallely v. Halpern ex rel. Est. of Winderman*, No. CIV.A.05-4184, 2005 WL 2002611,

at *3 (E.D. Pa. Aug. 16, 2005). Likewise, "[c]ontinuity is established by alleging either predicates extending over a substantial period of time (closed-end continuity), or predicates that threaten future criminal activity (open-ended continuity)." *Walther v. Patel*, No. CIV.A. 10-706, 2011 WL 382752 at *8 (E.D. Pa. Feb. 4, 2011) (citation omitted).  Mail and wire fraud constitute "predicate acts" under the Act.  *See* 18 U.S.C. § 1631(1).

"[A] party may establish continuity as a closed-ended concept by proving a series of related predicates extending over a substantial period of time." *Tabas*, 47 F.3d at 1292 (citing *H.J. Inc. v. Northwestern Bell Tel. Co*., 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).  The Supreme Court has made clear that "closed-ended" continuity can be met by establishing long-term conduct, but it has not defined what length of time qualifies as "substantial" for this purpose.  *See Tabas*, 47 F.3d at 1292 (citing *H.J. Inc*., 109 S.Ct. at 2902).  Nevertheless, the Third Circuit has indicated that a "fourteen month period of conduct may be sufficient to establish closed-ended continuity." *Tabas*, 47 F.3d at 1294 (citing *Swistock v. Jones*, 884 F.2d 755, 759 (3d Cir.1989)).

With respect to "open-ended" continuity, it can be established by demonstrating either: (1) "a small number of related acts that, though extending over a short period of time, 'themselves include a specific threat of repetition extending indefinitely into the future,'" or (2) "where the predicate acts are a 'regular way of conducting [a] defendant's ongoing legitimate business.'" *Walther*, 2011 WL 382752 at *8.  For example, courts in this Circuit have found such continuity where "a 'legitimate' businessman . . . regularly conducts his business through illegitimate means, that is, who repeatedly defrauds those with whom he deals and in the process commits predicate acts, for instance by using the postal service as a means of accomplishing his scheme." *Id.* at *8 n.107 (*citing Tabas v. Tabas*, 47 F.3d 1280, 1293 (3d. Cir. 1995)).  As such, the conduct need not be ongoing.  "Past conduct will satisfy the continuity requirement if by its nature [it] projects into

14

the future with a threat of repetition." *Banks v, Wolk*, 918 F.2d 418, 422 (3d. Cir. 1990) (internal quotations omitted).

Here, Zaftr has alleged an ongoing scheme involving fraudulent BTC transactions that has continued through at least December 2020, where the Kirk Defendants engaged Zaftr in repeated and escalating fraudulent transactions. *See* Compl. ¶¶ 13-67. The start date for this scheme is currently unknown to Plaintiff. Although the Kirk Defendants first engaged Plaintiff in August 2020, Kirk made express statements to Plaintiff regarding *prior BTC transactions* that he had purportedly engaged in with at least one of the international third parties who has been involved in this fraudulent scheme. *See id*. ¶ 53 ("Kirk confirmed that Kirk supposedly had been involved in a prior transaction where Smith had allegedly delivered BTC on short notice."). As such, while Zaftr only became a victim of Defendants' racketeering activities beginning in August 2020, statements that Kirk made to Plaintiff indicate that such activities predated Plaintiff's involvement.

With respect to the nature of Defendants' racketeering activities involving Zaftr, the Kirk Defendants employed a scheme by asking Zaftr to send increasingly large amounts of money on false promises that BTC would be delivered upon payment of the agreed-upon amounts. Every email, message, and transfer constitute a predicate act meant to conceal and perpetuate this fraudulent scheme. *See* Compl. ¶ 171 ("Defendants knowingly participated in and furthered this scheme through numerous acts of wire fraud."). The Kirk Defendants not only engaged Zaftr in multiple fraudulent transactions, each with its own set of agreements, they made continuing efforts to assuage Zaftr's growing concerns and to keep reengaging Zaftr in additional fraudulent transactions after Zaftr kept paying for BTC that was never delivered. *See* Compl. ¶¶ 13-67. The start date for this scheme is currently unknown, and has been adequately pled at this stage of the

case. As such, Plaintiff has adequately pled the requirements for closed-ended continuity involving a racketeering scheme occurring over a "substantial" period of time.

Nevertheless, even if Zaftr were found not to have adequately alleged closed-ended continuity, continuity still has been established in the Complaint under an "open-ended" continuity analysis. "[I]f a RICO action is brought before a plaintiff can establish long-term criminal conduct, the 'continuity' prong may still be met if a plaintiff can prove a threat of continued racketeering activity." *Tabas*, 47 F.3d at 1295. "Whether the predicate acts constitute a threat of continued racketeering activity depends on 'the specific facts of each case.'" *Id.* (citing *H.J. Inc.*, 109 S.Ct. at 2902). "[O]pen-ended continuity may be satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'" *Tabas*, 47 F.3d at 1295 (citing *H.J. Inc.*, 109 S.Ct. at 2902). Plaintiff has met this pleading requirement with regard to open-ended continuity. *See id.* ¶ 172 ("The numerous transmittals of fraudulent misrepresentations about the nature of the parties and the BTC transactions constitute a pattern, ***and pose a threat of continued fraudulent activity with respect to repeating this scheme with other potential buyers***. These acts are also interrelated by distinguishing characteristics, and are not isolated events.") (emphasis added).

The Kirk Defendants actively participated in *each of the* fraudulent BTC transactions of which Zaftr became a victim, and made repeated misrepresentations that were relied upon by Zaftr in continuing to engage in the transactions with Defendants. *See* Compl. ¶¶ 16, 31, 41. The Kirk Defendants received, distributed, and held funds that Zaftr provided in exchange for the BTC that Zaftr purchased but never received. *See* id. ¶¶ 25, 43. The Kirk Defendants' participation in this scheme was clearly predicated on Kirk's regular work as an attorney. *See* id. ¶ 16. Over the course

16

of the parties' transactions, Kirk actively facilitated and participated in the fraud perpetrated against Zaftr.  Moreover, Kirk *continues* to hold Zaftr's funds related to these transactions despite the fact that *none* of the BTC Zaftr paid for was ever delivered. *See* Compl. ¶ 58 ("On November 14, 2020, Plaintiff requested that Defendants return the $941,160.70 that was delivered to Kirk Law but which was not sent to Gomes. Kirk returned only $36,687.45 to Plaintiff and advised that all other funds had either been delivered to BVFR or were held for the benefit of BVFR.").

The Kirk Defendants' actions demonstrate both: (i) the specific threat of repetition of the fraudulent scheme extending indefinitely into the future involving other victims; and (ii) that this conduct reflects Defendant Kirk's regular way of conducting his ongoing business, through his law firm, Defendant Kirk Law PLLC.  Zaftr has thus sufficiently pled both "open-ended" and "closed-ended" continuity to survive a motion to dismiss Plaintiff's RICO claims.  Accordingly, the Kirk Defendants' Motion should be denied.

### 2. Contrary To The Kirk Defendants' Contentions, Plaintiff Has Sufficiently Pled That The Kirk Defendants Exercised Control Over The RICO Enterprise.

The Kirk Defendants assert that: "Plaintiff's RICO Claim fails as a matter of law because Plaintiff fails to demonstrate a separate injury due to the Kirk Defendants' control over the alleged enterprise."  Motion at 13.  The Kirk Defendants further assert that: "To properly plead a violation of Section 1962(b), a Plaintiff must show that the injury resulted from the defendants' control over the 'enterprise,' rather than from the underlying alleged racketeering activity."  Motion at 14.  In its Complaint, Zaftr has sufficiently alleged that the Kirk Defendants maintained control over the enterprise, which caused harm to Zadtr.  Kirk was a party to the sham BTC sales transactions as well as the parties' agreements with respect to those transactions.  *See* Compl. ¶¶ 13-67; *see also* Compl. at Ex. A, Ex. B, Ex. C, Ex. E, and Ex. F.  The Kirk Defendants helped organize these fraudulent sales, and disbursed the proceeds from the fraudulent sales, benefitting Kirk and

17

Lawrence when they were able to retain Zaftr's payments for BTC that was never delivered.  *See* Compl. ¶¶ 13-67.

As a general proposition, the RICO statute "describes two categories of associations that come within the purview of the 'enterprise' definition. The first encompasses organizations such as corporations and partnerships, and other 'legal entities.' The second covers 'any union or group of individuals associated in fact although not a legal entity.'"  *United States v. Turkette*, 452 U.S. 576, 581-82 (1981) (quoting 18 U.S.C. § 1961(4)).  This latter category is commonly referred to as an "association-in-fact" enterprise.  Here, Plaintiff has clearly alleged that Defendants had an association-in-fact enterprise over which the Kirk Defendants maintained control, which caused Plaintiff's injuries:

- "Defendants had a formal or informal organization in that Defendant Lawrence would approach a buyer such as Zaftr, and would falsely attest to the seller's credentials and experience in the sale of large amounts of BTC. Defendant Kirk would then prepare Purchase Agreements and Escrow Agreements, wherein he would act as "mandate counsel" for Defendant Lawrence, promising to hold a buyer's funds until the seller provides the BTC. In brokering these agreements, Defendant Lawrence would use his company Defendant BVFR while Defendant Kirk would use his law firm Defendant Kirk Law to add a sense of legitimacy to the fraudulent transactions."  Compl. ¶ 166.

- "The fraudulent schemes by Defendants would continue to escalate in that they would require Zaftr to progressively provide more funds in order to unlock the BTC that Defendants kept promising to provide. Defendants would then disburse the buyer's funds while failing to provide any BTC and while blaming their non-performance on the purported actions of third parties."  Compl. ¶ 167.

- "Defendant Lawrence and Defendant Kirk were aware of at least the general existence of the enterprise and knew that it extended beyond each of their individual roles." Compl. ¶ 168.

Moreover, as evidence of the Kirk Defendants' control over Defendants' enterprise, Plaintiff has pled that Kirk *continues* to hold Zaftr's funds from the fraudulent BTC transactions despite the fact that *none* of the BTC Zaftr paid for was ever delivered to Zaftr. *See* Compl. ¶ 58 ("On November 14, 2020, Plaintiff requested that Defendants return the $941,160.70 that was

delivered to Kirk Law but which was not sent to Gomes. Kirk returned only $36,687.45 to Plaintiff and advised that all other funds had either been delivered to BVFR or were held for the benefit of BVFR.").  As Plaintiff has pled that the Kirk Defendants have both disbursed Zaftr's funds to others within Defendants' fraudulent scheme and continue to hold a significant portion of those funds, Plaintiff has clearly met the pleading requirement to establish the Kirk Defendants' control over Defendants' RICO enterprise as well as the injuries the enterprise has caused to Plaintiff.

While Defendants rely heavily on *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1190 (3d Cir. 1993) in support of their contrary position, that decision is clearly distinguishable from the present matter.  In *Lightning Tube*, the Third Circuit: "held that in order to state a violation of section 1962(d) for conspiracy to violate subsection (a), (b), or (c), the plaintiff must establish that the defendants violated (or were going to violate) one of those subsections." *Rehkop v. Berwick Healthcare Corp.*, 695 F.3d 285, 290 (3d Cir. 1996).  "The problem in *Lightning Lube* was that the actions alleged to constitute violations of subsections 1962(a), (b), and (c) were not violations of these subsections, and thus they also failed to serve as the object of a section 1962(d) conspiracy." *Id*.  Here, by contrast, Plaintiff's allegations are sufficient to state claims for violations of subsections 1962(a), (b), and (c).  Accordingly, *Lightning Lube* provides no support for the Kirk Defendants' position.  Zaftr has properly alleged a violation of section 1962(b) based on the Kirk Defendants' control over the enterprise and the consequent injuries sustained by Plaintiff.  *See* Compl. ¶¶ 13-67.  As such, the Kirk Defendants' Motion should be denied.

**3. Contrary To The Kirk Defendants' Contentions, Plaintiff Has Sufficiently Pled A Separate Injury Due To The Kirk Defendants' Investment Of Racketeering Proceeds Into The Enterprise.**

The Kirk Defendants assert that Plaintiff does not articulate a separate injury under Section 1962(a) resulting from "the use or investment of racketeering income."  Motion at 17.  The Kirk

19

Defendants contend that Plaintiff has supposedly provided: "no factual support [to] suggest that the Kirk Defendants invested any money into an enterprise." *Id.* Contrary to the Kirk Defendants' contentions, Plaintiff's Complaint contains sufficient allegations that the Kirk Defendants used the proceeds from Defendants' fraudulent scheme to both further the scheme and to further injure Plaintiff. Accordingly, Plaintiff has sufficiently alleged a RICO claim under Section 1962(a).

As set forth in Plaintiff's Complaint, the Kirk Defendants invested in the enterprise by disbursing the proceeds from the fraudulent sales among the participants in the scheme:

- "Pursuant to the Purchase Agreement and the Escrow Agreement, Zaftr sent $2,254,514 to Kirk Law, and Kirk confirmed receipt of the funds." Compl. ¶ 25.

- "On September 4, 2020, Kirk Law returned $1,886,977.60 to Zaftr from the failed August Tranche. The remaining $367,536.40 was retained by Lawrence and BVFR." Compl. ¶ 30.

- "Zaftr sent the funds to Kirk Law pursuant to the parties' new agreement… Kirk wired $3,095,120.70 to the OCBC account from the Chase bank account of Kirk Law. Defendants retained $573,624.30 of these funds as their payment for the new transaction subject to the new transaction's closing successfully." Compl. ¶¶ 43-44.

- "On November 14, 2020, Plaintiff requested that Defendants return the $941,160.70 that was delivered to Kirk Law but which was not sent to Gomes. Kirk returned only $36,687.45 to Plaintiff and advised that all other funds had either been delivered to BVFR or were held for the benefit of BVFR." Compl. ¶ 58.

These allegations adequately establish the conduct of the Kirk Defendants in investing in the RICO enterprise. Nevertheless, Zaftr is currently unaware of the full extent of the conspiracy and the full scope of the scheme leading to Plaintiff's injuries. Unraveling the extent of Defendants' wrongdoings in connection with Plaintiff's RICO claims is the goal and purpose of the discovery process. *See, e.g., Rose v. Bartle*, 871 F.2d 331, 355 (3d Cir. 1989) ("under the Rule 12(b)(6) standard… it is enough that a [RICO] complaint put the defendant on notice of the claims against him. It is the function of discovery to fill in the details, and of trial to establish fully each element of the cause of action."). This includes the manner in which the Kirk Defendants invested

income into the enterprise.  As Zaftr has alleged: "Defendant Lawrence and Defendant Kirk invested income from racketeering activities into the enterprise and/or used such income to operate the enterprise." Compl. ¶ 181.  As a result of these activities, Zaftr "suffered an injury" "proximately caused" by such conduct.  *Id.* ¶¶ 182-83.  Plaintiff has therefore sufficiently alleged the elements of its Section 1962(a) RICO claim against the Kirk Defendants, and their Motion should be denied.[1]

### 4. Contrary To The Kirk Defendants' Contentions, Plaintiff Has Sufficiently Pled A RICO Claim Under Section 1962(d) Because It Has Adequately Alleged Claims Under Section 1962(a), (b), And (c).

The Kirk Defendants assert that "Plaintiff has failed to state a cognizable claim under Section 1962(a), (b), and (c)."  Motion at 18. Plaintiff thus argues that, "[w]ithout a substantive claim under any of these subsections, Plaintiff's claim under Section 1962(d) must fail as well." *Id*.  The Kirk Defendants' argument lacks merit because, as detailed above, Zaftr's claims under Section 1962(a), (b) and (c) are all sufficiently pled to survive dismissal. Consequently, Zaftr's claim under Section 1962(d) should survive dismissal.  *See e.g., Rehkop*, 695 F.3d at 290 ("the defendants' alleged violation of section 1962(c) can serve as the object of a section 1962(d) conspiracy, and if Rehkop was harmed by reason of the conspiracy, he may pursue a section 1962(d) claim.").

"To state a claim for RICO conspiracy, a plaintiff must allege that Defendant intended to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." *Brock*, 782 F. Supp. 2d at 142 (internal quotations omitted).  Zaftr has done so here.  *See* Compl. ¶ 186 (Defendants "engaged in the commission of those [predicate] acts to further the

---

[1]  In *Rose*, the Third Circuit observed that "[t]he determination of whether RICO pleadings are sufficient should not rest on whether the relevant allegations contain the correct talismanic language," and that complaints should be construed "in light of [RICO's] liberal pleading standard[s]."  871 F.2d at 357.

scheme described above."). A plaintiff must also allege: "(1) agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b), or (c)." *See Rose*, 871 F.2d at 366 (internal quotations omitted). Zaftr has further met these pleading requirements for its section 1962(d) claim. *See* Compl. ¶¶ 185-86. And although not necessary here, a "court may look to any 'factual allegations of particular acts' within the complaint as a whole incorporated by the conspiracy claim to provide this basis." *Rose*, 871 F.2d at 366 (reviewing other sections of a complaint to determine whether a conspiracy claim was sufficiently alleged). Here, Zaftr has properly alleged a violation of section 1962(d) based on Defendants' conspiring to violate sections 1962(a), (b) and (c).[2] *See* Compl. ¶¶ 184-90. Accordingly, the Kirk Defendants' Motion should be denied.

## C. Contrary To The Kirk Defendants' Contentions, Zaftr Has Appropriately Pled A Claim For Unjust Enrichment.

In its Complaint, Zaftr has properly pled alternative theories of liability, including claims for unjust enrichment and breach of contract.[3] *See* Compl. ¶¶ 68-114. While a plaintiff may not

---

[2] To the extent this Court finds any of Zaftr's RICO claims are insufficiently pled (which they are not), Zaftr requests leave to amend. *See Jatras v. Bank of Am. Corp.*, 2010 U.S. Dist. LEXIS 40074, at *17-18 (D.N.J. Apr. 22, 2010) (court granted leave to amend RICO claims under sections 1962(a), (c) and (d)); *see also Tierney & Ptnrs, Inc. v. Rockman*, 274 F. Supp. 2d 693, 699 (E.D. Pa. 2003) (court granted leave to amend because "it would be unfair to dismiss the Complaint with prejudice only because Plaintiff has not satisfied the peculiar pleading requirements of RICO."); *Bonavitacola Elec. Contr., Inc. v. Boro Developers, Inc.*, 2002 U.S. Dist. LEXIS 20245, at *11-12 (E.D. Pa. Oct. 23, 2002) (same); *Heintz Corp. v. Electro Methods*, 1995 U.S. Dist. LEXIS 8346, at *12 (E.D. Pa. June 15, 1995) (permitting amendment of section 1962(c) and (d) claims); *Klapper v. Commonwealth Realty Trust*, 657 F. Supp. 948, 958 (D. Del. 1987) (court granted plaintiffs leave to amend to include "any additional entities as possible enterprises" under liberal pleading standards espoused by the Third Circuit) (citations omitted).

[3] With respect to Zaftr's claims arising under state law, including its claims for breach of contract, unjust enrichment, conversion, and fraudulent misrepresentation/omission, the parties previously agreed that their disputes would be "governed by the laws of the Commonwealth of Pennsylvania, without regard to conflict of law principles." Compl. ¶¶ 71, 93; *see also* Compl., Ex. B, Escrow Agreement, ¶ R6; Ex. E, Second Escrow Agreement ¶ R6.

simultaneously recover under both a breach of contract claim and a claim for unjust enrichment covering the same subject matter, the Federal Rules of Civil Procedure permit pleading in the alternative. *United States v. Kensington Hosp.*, 760 F.Supp. 1120, 1135 (E.D.Pa. 1991) (citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir.1987)). "Courts have permitted plaintiffs to pursue alternative theories of recovery based both on breach of contract and unjust enrichment, even when the existence of a contract would preclude recovery under unjust enrichment." *Kensington Hosp.*, 760 F.Supp. at 1135. *See also In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 543 (E.D. Pa. 2010) ("The fifth element is not a sufficient reason to dismiss an unjust enrichment claim at the motion to dismiss stage, because Plaintiffs at this stage may plead alternate remedies."); *Broederdorf,* 129 F.Supp.3d at 198 n.10 ("These arguments are wholly inappropriate for this stage of litigation. Broederdorf is entitled to state alternative claims in his pleadings pursuant to Fed.R.Civ.P. 8(d)(2) and (3). Our Court of Appeals has interpreted this rule to mean that a court 'may not construe [a plaintiff's] first claim as an admission against another alternative or inconsistent claim.'") (citing *Independent Enterp., Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997)).

The Kirk Defendants' argument that Zaftr's unjust enrichment claim is barred because of the written agreements between the parties is without any merit at this stage of the litigation.  While the parties' agreements were memorialized in contracts, Zaftr is not obligated to plead only one theory of liability where multiple theories in the alternative may be appropriately maintained at this stage of the litigation. Notably, the Kirk Defendants have not challenged the sufficiency of either Zaftr's unjust enrichment claim or its breach of contract claims.  Instead, the Kirk Defendants merely argue that Zaftr's unjust enrichment claim must be dismissed solely because Plaintiff has also asserted breach of contract claims.  Where, as here, all of a plaintiff's claims

23

"share the same factual basis," and the "claims are alternative theories of recovery based on the same factual circumstances… [i]t would serve no purpose at this early point in the litigation to limit Plaintiff's avenues of recovery when the underlying facts and events for all claims are the same." *Sudofsky v. JDC Inc.*, No. Civ.A. 03–CV–1491, 2003 WL 22358448, *4 (E.D. Pa. Sept. 8, 2003) (declining to dismiss plaintiff's fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, and conversion claims because the factual circumstances alleged sufficiently supported all such claims at the pleadings stage). Accordingly, the Kirk Defendants' Motion should be denied.

**D. Contrary To The Kirk Defendants' Contentions, Zaftr Has Appropriately Pled A Claim For Conversion.**

The Kirk Defendants argue that Zaftr's conversion claim should be dismissed because the property Defendants have wrongfully controlled is supposedly "intangible" cryptocurrency. Motion at 20-21. The Kirk Defendants also argue that Zaftr's conversion claim should be dismissed on the basis that "Plaintiff's rights are adequately protected by the terms of the many of contracts that govern this complicated transaction for the sale of cryptocurrency." Motion at 21. The Kirk Defendants' arguments are wholly without merit. First, contrary to the Kirk Defendants' contentions, Plaintiff has alleged that the Kirk Defendants have converted Plaintiff's ***money***, i.e., its United States Dollars ("USD"), that it paid to the Kirk Defendants for BTC that was never delivered, which can properly be the subject of a conversion claim. Second, Plaintiff is clearly entitled to plead inconsistent forms of relief, including claims for both breach of contract and conversion, and is not required at this stage of the proceedings to select a single type of relief to pursue. As such, Plaintiff has properly pled a conversion claim, and the Kirk Defendants' Motion should be denied.

160603.00602/126505172v.1

Conversion is defined as "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Leonard A. Feinberg, Inc. v. Cent. Asia Capital Corp., Ltd*., 974 F.Supp. 822, 844-45 (E.D. Pa. 1997) (citation omitted). "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.' *Bell v. Money Resource Corp*., Civ. No. 08-639, 2009 WL 382478, *4 (E.D. Pa. Feb. 13, 2009) (citing Restatement (Second) of Torts § 222A(1) (1965)) (noting that "Pennsylvania courts have followed the Restatement (Second) of Torts when analyzing claims for conversion.").

Importantly, "***money can be the subject of a tort of conversion***." *Broederdorf*, 129 F.Supp.3d at 198 (emphasis added) (*citing Francis J. Bernhardt, III, P.C. v. Needleman*, 705 A.2d 875, 878 (Pa. Super. 1997); *see also T.D. Melchiorre, Inc. v. Victory Foodservice Distributors Corp.*, No. 3:18-CV-1933, 2021 WL 426493, *3 (M.D. Pa. Feb. 8, 2021) ("Money can be the subject of a tort of conversion in Pennsylvania.") (*citing Vavro v. Albers*, No. 2:05CV321, 2006 WL 2547350, *14 (W.D. Pa. 2006)). Thus, pleading that a defendant had actual or constructive possession of money to which the plaintiff was entitled, provides "sufficient facts to plausibly state a claim for relief under the tort of conversion." *Broederdorf*, 129 F.Supp.3d at 198 (refusing to dismiss a conversion claim where the plaintiff pled "a right to the insurance proceeds from the policy" at issue in the litigation). Because Zaftr has alleged that the Kirk Defendants have converted Plaintiff's USD that it paid to the Kirk Defendants for BTC that was never delivered, Plaintiff has properly stated a claim for conversion.

Further, Zaftr is not barred from pleading a conversion claim simply because it has also asserted breach of contract claims. A plaintiff may assert both breach of contract and conversion

claims despite the inconsistency of the remedies alleged, since otherwise, the plaintiff "may be left without a remedy" if one of the claims is dismissed.  *See e.g., Liberty Mutual Insurance Company v. Gemma*, 301 F.Supp.3d 523, 539 (W.D. Pa. 2018) (declining to "dismiss Plaintiff's conversion claim … at the Rule 12(b)(6) stage because doing so may mean that Liberty Mutual 'may be left without a remedy'").  Where, as here, all of a plaintiff's claims "share the same factual basis," and the "claims are alternative theories of recovery based on the same factual circumstances… [i]t would serve no purpose at this early point in the litigation to limit Plaintiff's avenues of recovery when the underlying facts and events for all claims are the same."  *Sudofsky v. JDC Inc.*, No. Civ.A. 03–CV–1491, 2003 WL 22358448, *4 (E.D. Pa. Sept. 8, 2003) (declining to dismiss plaintiff's fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, and conversion claims because the factual circumstances alleged sufficiently supported all such claims).  Accordingly, the Kirk Defendants' Motion should be denied.

### E. Contrary To The Kirk Defendants' Contentions, Zaftr Has Sufficiently Pled Its Fraudulent Misrepresentation/Omission Claim.

Zaftr has pled facts with sufficient specificity to sustain its fraudulent misrepresentation/omission claim against the Kirk Defendants.  The elements of fraud are: "(1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance."  *T.D. Melchiorre, Inc. v. Victory Foodservice Distributors Corp.*, No. 3:18-CV-1933, 2021 WL 426493 at *4 (M.D. Pa. Feb. 8, 2021); s*ee also Broederdorf v. Bacheler*, 129 F.Supp.3d 182, 198 (E.D. Pa. 2015).  Federal Rule of Civil Procedure 9(b) requires that claims of fraud be stated with particularity, and "malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  Damages must

26

also be pled to be a proximate result of the misrepresentations.  *Benevento v. LifeUSA Holding, Inc.*, 181 F.R.D. 298, 300 (E.D. Pa. 1998) (citing *Killian v. McCulloch*, 850 F.Supp. 1239, 1252 (3d Cir. 1994); *Constitution Bank v. DiMarco*, 155 B.R. 913, 918 (E.D.Pa.1993)).

"Bearing in mind that Rule 9(b) must be harmonized with Rule 8(a)(2) which requires a short and plain statement of the claim showing that the pleader is entitled to relief, the Third Circuit has cautioned that focusing exclusively on Rule 9(b)'s particularity language is too narrow an approach and subjects the allegations of fraud to too strict a scrutiny." *Benevento*, 181 F.R.D. at 300 (citations and internal quotations omitted). "In other words, Rule 9(b) was not intended to be so strict as to require a plaintiff to know all the details regarding the alleged fraud before fraud may be plead." *Id.*  As discussed in greater detail *supra*, Zaftr has alleged with sufficient specificity the Kirk Defendants' participation in the fraudulent scheme, including the Kirk Defendants' fraudulent misrepresentations/omissions during the course of the parties' dealings.  These claims are not only supported by specific allegations in the Complaint, they are also supported by the written agreements attached to the Complaint.  *See* Compl. ¶¶ 13-67; *see also* Compl. at Ex. A, Ex. B, Ex. C, Ex. E, and Ex. F.

Contrary to the Kirk Defendants' contentions, Zaftr has alleged that Kirk was involved and, in fact, an integral part of the fraud.  Indeed, the Complaint specifically details Kirk's false representations made in an effort to keep Zaftr engaged in the sham transactions.  *See* Compl. ¶¶ 21, 26, 53. Zaftr has alleged that the Kirk Defendants made these false representations knowing that they were false, and knowing that they would induce Zaftr to enter into the Defendants' proposed agreements. *See* Compl. ¶¶ 130-31.  As a direct and proximate result of its reliance on these representations, Zaftr suffered damages "in an amount in excess of $32,826,500.00." Compl. ¶ 67. The Kirk Defendants' argument that the Complaint does not allege specific fraudulent

27

conduct by them is meritless.  The Kirk Defendants not only participated in these fraudulent misrepresentations/omissions, but also accepted and retained funds that Zaftr paid in connection with the sham transactions.  *See* Compl. ¶ 58. These allegations, paired with the agreements incorporated into and attached to the Complaint, are more than sufficient to overcome the Kirk Defendants' Motion.  Accordingly, the Motion should be denied.

## IV.     CONCLUSION

For all of the foregoing reasons, the Kirk Defendants' Motion to Dismiss should be denied in its entirety.

**BLANK ROME LLP**

Dated:  August 5, 2021

By: */s/ Lewis W. Schlossberg*
   Joseph G. Poluka (Pa. ID No. 42035)
   Lewis W. Schlossberg (Pa. ID No. 91773)
   Taylor K. Lake (Pa. ID No. 323120)
   Blank Rome LLP
   One Logan Square
   130 N. 18th St.
   Philadelphia, PA  19103
   (215) 569-5500
   *Attorneys for Plaintiff*
   *Zaftr Inc.*

160603.00602/126505172v.1

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on August 5, 2021, a copy of the foregoing Memorandum of Law in Opposition to the Motion to Dismiss of the Kirk Defendants, was served via the Court's CM/ECF system upon the following, and said filing is available for viewing by all parties of record:

Seth L. Laver, Esquire
Kristen J. Coleman, Esquire
GOLDBERG SEGALLA LLP
1700 Market Street, Suite 1418
Philadelphia, PA 19103-3907
*Counsel for Defendants*
*John Kirk, Esquire, and Kirk Law PLLC*

Joseph M. Armstrong, Esquire
Gabriel V. Celii, Esquire
OFFIT KURMAN, P.C.
1801 Market Street, Suite 2300
Philadelphia, PA 19103

-and-

Jason A. Nagi, Esquire
(*pro hac vice* to be submitted)
590 Madison Ave., 6th Floor New York, NY 10022
*Counsel for Defendants Kevin*
*Jameson Lawrence, Esquire and*
*BVFR & Associates, LLC*

*/s/ Lewis W. Schlossberg*
LEWIS W. SCHLOSSBERG

29

160603.00602/126505172v.1