IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNYSLVANIA

| | | |
|---|---|---|
| *ZAFTR INC. n/k/a SVELLA FINANCIAL CORP.* | : | CIVIL ACTION |
| | : | |
| | : | Case No. 2:21-cv-02177-WB |
| *Plaintiff* | : | |
| | : | |
| *vs.* | : | |
| | : | |
| **KEVIN JAMESON LAWRENCE, ESQUIRE, BVFR & ASSOCIATES, LLC, JOHN KIRK, ESQUIRE, AND KIRK LAW, PLLC** | : | |
| | : | |
| *Defendants.* | : | |

**DEFENDANTS KEVIN JAMESON LAWRENCE AND BVFR & ASSOCIATES, LLC'S REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

A. INTRODUCTION

In its response to BVFR Defendants' Motion for Judgment on the Pleadings, Plaintiff still fails to show that it has sufficiently pled claims for RICO violations in Count VIII or that it has sufficiently pled its state law claims for unjust enrichment in Count III, conversion in Count IV, fraudulent misrepresentation in Count V, or negligent misrepresentation in Count VI. Plaintiff ignores the specific requirements for a civil RICO claim in an exaggerated attempt to demonize Defendants and force a simple breach of contact claim into something it is not. This Court should look beyond the smoke and mirrors and apply the well-established RICO threshold requirements. Namely, Plaintiff cannot and has not properly pled:

(1) that Defendants engaged in a pattern of racketeering activity;

(2) that a separate injury has occurred as a result of Defendants control of the enterprise; or

(3) that a separate injury has occurred as a result of Defendants investment of racketeering proceeds into an enterprise.

Further, to avoid dismissal of his duplicative tort claims under the gist of the action doctrine, Plaintiff contradicts himself. In the Complaint, Plaintiff alleges that BVFR Defendants played a pivotal role as evidenced by the many contractual commitments that were breached; however, now, in his Opposition Brief, Plaintiff argues that Defendants were not even "a part of most of the contracts. The reality is Plaintiff's claims against Defendants rely on and arise entirely from the obligations owed under contract. This is how Plaintiff pled his claims. As such, Plaintiff's RICO, Unjust Enrichment, Conversion, and Misrepresentation claims should be dismissed with prejudice.

### B. ARGUMENT

1. *Plaintiff has failed to satisfy the continuity requirement in order to establish a "pattern" of racketeering activity.*

To establish that there was a "pattern" of racketeering activity, Plaintiff must show both relatedness among the predicate acts and continuity. *Klineburger v. Kell*, 2017 U.S. Dist. LEXIS 65650, at *18 (E.D. Pa. May 1, 2017). It is well-settled that the Third Circuit has found that "fraudulent conduct lasting twelve months does not establish closed-ended continuity." The Complaint, on its face, states that the events of this case only occurred over a period of four months from August 2020 to December 2020. *See* Compl. at ¶¶ 13-64. Plaintiff obviously has not satisfied the closed-continuity requirement, which is, in and of itself a fatal flaw warranting dismissal.

To get around this failure, Plaintiff alleges, for the first time in its Opposition Brief, that for the purposes of RICO continuity, the start date of the allegedly fraudulent scheme is "currently

unknown to Plaintiff." *See* Opposition Brief at 15. Plaintiff references Paragraphs 28, 29 and 74 to evidence its allegation that the scheme started at an unknown time in the past in "prior transactions." *See* Compl. at ¶¶ 28, 29 and 74. However, if these "prior transactions" were to establish a start date of the scheme, Plaintiff has failed to state with even minimal specificity whether the alleged scheme started the day prior to its involvement with Defendants, or ten years prior. Plaintiff also provides no supporting facts relating to BVFR Defendants role in these hypothetical "prior transactions," and why the Court is to believe these transactions were in any way nefarious in nature, stating merely that "Lawrence advised Zaftr that Lawrence and BVFR had previously worked with Gomes, as well as Gomes' Bitcoin miner" and "Lawrence advised Zaftr that he had vetted the SOH bank account 'years ago'" and that Lawrence had "business dealings with Smith for the past several years."  *See* Opposition Brief at p. 15.

      The Complaint does not provide a date of when these transactions allegedly occurred or what exactly occurred other than Lawrence allegedly expressing that he had prior contact with these individuals. Prior contact does not equate to prior predicate acts of racketeering. Therefore, this new open-ended start date for the alleged RICO scheme does not satisfy the closed-ended continuity requirement as a matter of law and is woefully insufficient in detail and supporting facts to advance a RICO claim

      Plaintiff also fails to satisfy the open-ended continuity requirement, which can be established by showing that the commission of the predicate acts is the entity's "regular way of doing business" or that the "racketeering acts themselves include a specific threat of repetition extending indefinitely into the future." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989). Here, Plaintiff asserts that it satisfies this requirement in Paragraph 172 of the Complaint. *See* Opposition at 16. Yet, paragraph 172 provides no specific facts detailing how the commission

of the predicate acts constitutes BVFR Defendants' regular way of doing business or how there was a threat of reoccurrence. Rather, Plaintiff only states that this requirement was satisfied because BVFR Defendants allegedly expressed prior contacts with Gomes and Smith to Plaintiff and that BVFR Defendants retained sums owed to them under their agreement with Plaintiff. At best, Plaintiff pleads that BVFR Defendants held Plaintiff to the letter of Plaintiff's written agreement.  This does not satisfy the open-ended continuity requirement under RICO.

Plaintiff argues that because BVFR Defendants were involved in arranging Plaintiff with the Bitcoin sellers, and that Lawrence had claimed he had done business with them before, that this alone establishes a threat of repeated illicit conduct and BVFR's regular way of doing business. Yet, simply arranging a buyer with a seller who BVFR Defendants had worked successfully with before and believed in good faith the transaction with Plaintiff would be successful, does not support an ongoing threat or an illicit business practice. With nothing more, setting forth a formulaic recitation of the elements of open-ended continuity will not suffice. Therefore, by failing to show continuity, Plaintiff's RICO claim under 18 U.S.C. § 1962(c) fails as a matter of law.

> 2. *Plaintiff has failed to demonstrate that a separate injury occurred under 18 U.S.C. § 1962(b) due to the BVFR Defendants control of the alleged enterprise.*

As stated in the BVFR Defendants' opening memorandum, to properly plead a violation of Section 1962(b), a Plaintiff must show that the injury resulted from the defendants' control over the "enterprise," rather than from the underlying alleged racketeering activity. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993). "[A] plaintiff must show injury from the defendant's acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts." *Id*. at 1190 (emphasis added).

Plaintiff states that *Lightning Lube, Inc. v. Witco Corp.* "provides no support for the Lawrence Defendants' position." *See* Opposition at 20. Plaintiff is mistaken as *Lightning Lube* is

4

undoubtedly instructive here. That court upheld a dismissal of the plaintiff's Section 1962(b) claim because it found that the plaintiff "merely parrots the same injury that section 1962(c) is meant to remedy and fails to explain what additional injury resulted from the person's interest or control of the enterprise." *Id*. Just as in *Lightning Lube*, Plaintiff has failed to articulate an "additional injury."

In Plaintiff's Opposition, it cites to Paragraphs 166 - 168 to purportedly show that "the Lawrence Defendants maintained control [over the enterprise], which caused Plaintiff's injuries." See Opposition at 19. However, these paragraphs are set forth in Count VIII – Claim 1, 18 U.S.C. § 1962(c), not under Claim 2, 18 U.S.C. § 1962(c). This clearly demonstrates that Plaintiff reasserts the *same* alleged injury for its claims under Section 1962 (c) and Section 1962 (b). Plaintiff's misinterpretation, or misapplication, of the law is clear because it cannot show what additional injury resulted from the BVFR Defendants' alleged interest or control of the enterprise and instead merely parrots the same injury that arose from the underlying alleged racketeering activity itself. Therefore, under binding precedent, Plaintiff has failed to state a claim under RICO Section 1962(b).

> 3. *Plaintiff's failure to assert claims under 18 U.S.C. §§ 1962(c) and 1962 (b) preclude Plaintiff from asserting claims under 18 U.S.C. § 1962(a) and (d)*.

In order to successful assert a claim under Section 1962(a), the plaintiff must allege an independent injury resulting from the investment of racketeering income rather than the same injury caused by the underlying predicate acts themselves. *Glessner v. Kenny*, 952 F.2d 702, 708 (3d Cir. 1991); *Banks*, 918 F.2d T 421; *Rose v. Bartle*, 871 F.2d 331, 357-58 (3d Cir. 1989).

Here, in terms of the injury arising under Section 1962(a), Plaintiff states that it "suffered an injury to its business in the buying and selling of BTC, including harm to its reputation and the forced disruption of its business activities." *See* Compl. at ¶ 182. This identical injury was articulated in its claim under Section 1962(c). *See* Compl. at ¶ 174. To address its failure to identify

5

an independent injury, Plaintiff states that it is "currently unaware of the…full scope of the scheme leading to Plaintiff's injuries." *See* Opposition at 11. However, in order to survive a Motion to Dismiss, Plaintiff is "required to allege adequately that the defendants used or invested racketeering activity income in the establishment or operation of the enterprises." *Rose v. Bartle*, 871 F.2d 331, 357 (3d Cir. 1989).

Plaintiff has failed to show that BVFR Defendants used or invested Plaintiff's funds back into the alleged enterprise, because such facts do not exist. Instead, Plaintiff has only pled that the BVFR Defendants retained its fee for brokering the transaction which was due based upon the terms of the contractual agreement. Plaintiff does not and cannot allege that BVFR Defendants retained or used in any way any of the millions of dollars it transmitted for the purchase of the Bitcoin. Therefore, Plaintiff has failed to state a cognizable claim under Section 1962(a).

In addition, to prevail under Section 1962(d), a plaintiff must first establish its claim under Section 1962(a), (b), or (c). *Yucaipa Am. All. Fund I, L.P. v. Ehrlich*, 204 F. Supp. 3d 765, 783 (D. Del. 2016). Without a substantive claim under Section 1962(a), (b), and (c), Plaintiff's claim under Section 1962(d) must fail as well. Thus, Plaintiff's claim under Section 1962(d) must be dismissed as a matter of law.

4. *Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law*

In Plaintiff's Opposition, it states that "Zaftr is not obligated to plead only one theory of liability where multiple theories in the alternative may be appropriately maintained at this stage of the litigation." *See* Opposition at 23. To the contrary, this Court recently held that in Pennsylvania the unjust enrichment doctrine is "inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Hollenshead v. New Penn Fin., LLC*, 447 F. Supp. 3d 283, 293 (E.D. Pa. 2020). This Court also stated that "[c]ourts typically allow a plaintiff

to plead both a breach-of-contract claim and an unjust-enrichment claim only where there is some dispute as to whether a valid, enforceable written contract exists." *Id*. (citing *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 516 (E.D. Pa. 2012)).

Plaintiff admits, as it must, that "the parties' agreements were memorialized in contracts." *See* Opposition at 23. Of course, those very contracts are attached to the Complaint. Just as in *Hollenshead*, "[n]either party claims that the contract was either invalid or unenforceable." *Hollenshead*, 447 F. Supp. 3d at 293. Because an adequate remedy at law exists, Plaintiff may not alternatively plead a claim for unjust enrichment, even at the pleading stage of the litigation. *Id*. Therefore, Plaintiff's claim for unjust enrichment fails as a matter of law.

> 5. *Plaintiff Fails to State Valid Claims for Conversion and Misrepresentation Under the Gist of The Action Doctrine.*

Contrary to Pennsylvania law, Plaintiff asserts that it "is entitled to plead inconsistent forms of relief, including claims for both breach of contract and conversion," (see Opposition at 24). *See, e.g., Advanced Wealth Solutions v. Xilas*, 2012 Pa. Dist. & Cnty. Dec. LEXIS 14859, *12. When a plaintiff attempts to turn a breach of contract action into an action in tort for conversion, this violates the "gist of the action doctrine." *Id*. The gist of the action doctrine acts to foreclose tort claims: (1) arising solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim. *Id*. at *13 (*citing Strausser v. Pramco*, 944 A.2d 761, 767 (Pa. Super. 2008)). Here, Plaintiff contends that the Defendants have converted Plaintiff's money that it paid to the Defendants for BTC that was never delivered. However, Plaintiff's conversion claim falls clearly within the parameters of the gist of the action doctrine because the claim arises from the contractual relationship between the

parties and the liability stems from violation of the contract. Consequently, Plaintiff's conversion claim must be dismissed. *See, e.g. Freedom Med., Inc. v. Royal Bank of Canada*, 2005 U.S. Dist. LEXIS 37836, at *26-*27 (E.D. Pa. Dec. 30, 2005) (dismissing a conversion claim at the motion to dismiss stage when the pleadings revealed the conversion claim was merely a damage claim for breach of contract).

As explained by the district court in *Vives v. Rodriguez*, "fraudulent inducement claims predicated upon misrepresentations as to a party's intent to perform under a contract" are "barred by the gist of the action doctrine" because "[t]here can be little doubt that a misrepresentation as to a party's intent to perform contractual duties 'concern[s] the performance of contractual duties.'" 849 F.Supp.2d at 520–21; *see also Atl. Holdings, Ltd. v. Apollo Metals, Ltd.*, 263 F. Supp. 3d 526, 531 (E.D. Pa. 2017) (barring Plaintiff's fraudulent misrepresentation claim under the gist of the action doctrine).

Similarly, like in *Vives* and *Apollo Metals* (cited and discussed in BVFR Defendants' Brief in Support of Judgment on the Pleadings), here Plaintiff alleges that BVFR Defendants' fraudulent and/or negligent misrepresentations induced Plaintiff into entering into certain agreements:

> "122. Defendant Lawrence, in presenting Smith's fraudulent passport and purporting to guarantee Smith's credentials, **misrepresented Smith's identity and Smith's ability to perform under the agreements**.
>
> 123. **This misrepresentation was material to Zaftr's participation in the Purchase Agreement, Escrow Agreement, and Second Escrow Agreement, because the participation of a known and reliable seller was a necessary condition of the agreement**." (*Exhibit "A"* at 25; *see also Ex. A* at ¶¶139-141 where Plaintiff alleges identical facts in support of his Negligent Misrepresentation claim).

As pled, the alleged fraudulent inducement concerned the ability to perform under ***contract***, which gave rise to Plaintiff's rights asserted in the Complaint. Plaintiff's negligent

8

misrepresentation claim relies on the same contractual assertions. As such, Plaintiff's claims sound in contract rather than tort; all duplicative tort claims should be dismissed as a matter of law. *See e.g., Williamsburg Commons Condo. Ass'n v. State Farm Fire & Cas. Co.*, 907 F. Supp. 2d 673, 679 (E.D. Pa. 2012) ("[Plaintiffs] cannot avoid the fact that the essence of their lawsuit concerns a breach of contract. Even if [Plaintiffs] claim for fraudulent inducement were sufficiently pled, then, it would fail under the gist of the action doctrine").

Plaintiff, in his Opposition Brief, argues that the tort claims are distinct and distinguishable from the contractual claims; however, Plaintiff's actual Complaint alleges differently. Plaintiff's tort claims rely entirely and inextricably with the contractual claims:

> "117. In particular, Plaintiff paid $2,254,514.00 with respect to the August Tranche of BTC that Defendants never delivered to Plaintiff **as promised under the parties' Agreements**. Of that amount, only $1,885,977.60 was returned to Plaintiff and $367,536.40 was retained by Defendants.
>
> 118. Plaintiff also paid SOH the amount of $1,683,942.68 with respect to the September Tranche **as directed in the Agreements** as payment for BTC that Defendants never delivered to Plaintiff as **promised under the parties' Agreements**.
>
> 119. Plaintiff also paid Defendants the amount of $3,668,745.00 with respect to the October Tranche for BTC that Defendants never delivered to Plaintiff **as promised under the parties' Agreements.**
>
> 120. Plaintiff has therefore suffered, and will continue to suffer, damages including the loss of the converted property and its inability to use said property in the ordinary course of business. **Such damages also include the 581 BTC that Plaintiff was entitled to receive from Defendants under the parties' Agreements, which has a current market value of $32,826,500.00**." *(Exhibit "A"* at p. 24) (emphasis added).

Without the alleged breach of contract, no tort would exist. Plaintiff can only claim that there was a conversion and misrepresentations because promises made under contract are alleged to have not been met. These are textbook duplicative tort claims and the reason why the gist of the action doctrine exists.

## C. CONCLUSION

For the reasons set forth above, and in BVFR Defendants' Memorandum of Law in Support of its Motion for Judgment on the Pleadings, BVFR Defendants respectfully requests that this Court dismiss Counts III-VI, and Count VIII in Plaintiff's Complaint against them, with prejudice, as set forth in Order attached to its Motion.

Respectfully submitted,

**OFFIT KURMAN, P.C.**

Dated: September 2, 2021  By:  /s/Gabriel V. Celii
Gabriel V. Celii
Joseph M. Armstrong
1801 Market St. – Suite 2300
Philadelphia, PA 19103
(267) 338-1300 (Phone)
(267) 338-1335 (Fax)
gcelii@offitkurman.com
jarmstrong@offitkurman.com

-and-

Jason A. Nagi
(Admitted *pro hac vice*)
590 Madison Ave., 6th Floor
New York, NY 10022
(212) 380-4108
jason.nagi@offitkurman.com

*Attorneys for Defendants, BVFR & Associates, LLC and Kevin Jameson Lawrence, Esq.*

## CERTIFICATION OF SERVICE

I, Gabriel V. Celii, hereby certify that on the date set forth below, I served on all counsel of record, a true and correct copy of the foregoing Reply in Support of BVFR Defendants' Motion for Judgment on the Pleadings *via* the Electronic Case Filing System.

Date: September 2, 2021			By:  */s/ Gabriel V. Celii*
				GABRIEL V. CELII