IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ZAFTR INC.,** <br>     **Plaintiff,** <br><br> v. <br><br> **KEVIN JAMESON LAWRENCE, BVFR & ASSOCIATES, LLC, JOHN KIRK, AND KIRK LAW PLLC,** <br>     **Defendants.** | **CIVIL ACTION** <br><br><br><br> **NO. 21-2177** |

**MEMORANDUM OPINION**

  This suit arises out of a series of agreements and unrealized transactions for the purchase of 10,000 Bitcoin by Plaintiff Zaftr Inc., n/k/a Svella Financial Corp. ("Zaftr") from a third-party seller through the intermediary of Defendants. Less than four months after it signed the initial contract, Zaftr had paid over $5.6 million and received not one Bitcoin for its trouble. Unable to secure a return of its money, Zaftr brought this action for breach of contract, unjust enrichment, conversion, fraudulent misrepresentation/omission, negligent misrepresentation/non-disclosure, civil conspiracy, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1961–1968), and for declaratory judgment.[1]

  Defendants Kirk Law PLLC ("Kirk Law") and John Kirk ("Kirk") bring a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b). After filing an Answer to the Complaint, Defendants BVFR & Associates LLC ("BVFR") and Kevin Jameson Lawrence ("Lawrence") (collectively, the "Lawrence Defendants") now bring a Motion for Judgment on

---

[1] This Court has jurisdiction under both 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1332 (diversity jurisdiction).

1

the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Both Motions seek the dismissal for failure to state a claim of Counts III (unjust enrichment), IV (conversion), V (fraudulent misrepresentation/omission), and VIII (RICO); the Lawrence Defendants also argue for dismissal of Count VI (negligent misrepresentation/non-disclosure).

For the reasons that follow, the Motion to Dismiss and the Motion for Judgment on the Pleadings will be denied as to the unjust enrichment, conversion, fraudulent misrepresentation/omission, and negligent misrepresentation/non-disclosure claims, and granted as to the RICO claim, which shall be dismissed with leave to amend.

## I.  FACTS

Zaftr is a digital asset company that buys and sells Bitcoin.[2]  In the summer and fall of 2020, Zaftr entered into six agreements and paid millions of dollars in an attempt to purchase 10,000 Bitcoin from Bulk Bitcoin Trader Limited ("BBT").

Defendants were the middlemen in these transactions.  BVFR, through its CEO Kevin Lawrence, served as BBT's "Mandate," with "authority to act and negotiate a deal on [BBT's] behalf."  All of Zaftr's communications with BBT occurred through Lawrence, who represented that he had a prior business relationship with BBT's director, James Smith, and sent Zaftr a copy of Smith's passport as proof of Smith's identity.  The Kirk Defendants (John Kirk and Kirk Law) were counsel to BVFR and held Zaftr's payments in escrow.  Like Lawrence, Kirk assured Zaftr

---

[2] Bitcoin is a cryptocurrency.  *Bitcoin*, Merriam-Webster, https://www.merriam-webster.com/dictionary/Bitcoin.  Cryptocurrency is "[a] digital or virtual currency that is not issued by any central authority, is designed to function as a medium of exchange, and uses encryption technology to regulate the generation of units of currency, to verify fund transfers, and to prevent counterfeiting."  *Cryptocurrency*, *Black's Law Dictionary* (11th ed. 2019).  "Bitcoin miners" enter new bitcoins into circulation and confirm new transactions through a complex process called "Bitcoin mining."  Euny Hong, *How Does Bitcoin Mining Work*, Investopedia (Sept. 21, 2021), https://www.investopedia.com/tech/how-does-bitcoin-mining-work/.

that he had been involved in a prior transaction with Smith.

On August 25, 2020, Lawrence set the purchase price for the first tranche of 200 Bitcoin at $2,254,514.  Zaftr sent the money to Kirk Law.  When BBT failed to deliver any Bitcoin, Kirk and Lawrence explained the delay as the result of a "timing issue" they were having with a third party in a separate transaction.  By September 4, 2020, Zaftr still had not received any Bitcoin.  Kirk Law refunded $1,886,977.60 to Zaftr, but the Lawrence Defendants retained $367,536.40, subject to the future success of the deal.  The first attempt had failed.

Meanwhile, on or around September 1, 2020, the Lawrence Defendants told Zaftr that BBT had a new proposal.  BBT would send the Bitcoin if Zaftr agreed to use a new escrow attorney: Sabarudin, Othman & Ho ("SOH"), a Malaysian law firm represented by Kenneth Gomes ("Gomes").  To convince Zaftr that this arrangement was legitimate, Lawrence told Zaftr: (1) that he and BVFR had worked with Gomes before; (2) that he had vetted SOH's account at Hong Leong Bank; and, (3) that Gomes was both a managing partner of SOH and the signatory on the bank account.

For this second attempt, BBT agreed to sell 200 Bitcoin to Zaftr for $2,051,479.08.  Zaftr sent the money to SOH's account (less the $367,536.40 previously retained by the Lawrence Defendants).  In the weeks that followed, Gomes kept requesting additional documents to complete the transaction.  Lawrence advised Zaftr to respond, assuring Zaftr that the Bitcoin would be delivered as soon as the funds cleared.  Zaftr complied, but no Bitcoin arrived.

Then BVFR announced BBT's third offer: if Zaftr sent more money to a new bank account, BBT would sell Zaftr 510 Bitcoin instead of just 200.  Lawrence told Zaftr that this would expedite the whole transaction because the funds for the additional 310 Bitcoin would not

need the same clearance at the bank. Lawrence also affirmed that Gomes had control over the account and the funds would be held in escrow. Defendants told Zaftr that BBT would deliver the Bitcoin as soon as the additional payment was received by Gomes' new bank, OCBC Singapore. Lawrence set the price for the additional 310 Bitcoin at $3,668,745. Zaftr sent the money to Kirk Law. Kirk wired $3,095,120.70 to SOH's OCBC account and Defendants retained $573,624.30, subject to the successful closing of the transaction.

Soon after, on October 26, 2020, Kirk reported that OCBC had received the funds. Lawrence claimed that he had told Gomes and asked BBT to deliver the Bitcoin. The next day, Gomes claimed that the funds had not yet posted and refused to tell BBT to release the Bitcoin. For over a week, Zaftr sent multiple requests to Lawrence and Gomes for immediate delivery of the Bitcoin. In the meantime, BBT was dissolved from the UK companies' registry.[3]

On November 5, 2020, Gomes told Zaftr that although the funds had posted at his bank, BBT's Bitcoin miner was refusing to deliver the Bitcoin. Gomes asked Zaftr to send $1 million so that he could pay the Bitcoin miner directly. Zaftr refused. A couple of weeks later, Gomes asked for $1,600,000 to "close the deal," warning Zaftr that his law firm (SOH) was not and should not be involved. Hong Leong Bank later confirmed that Zaftr's payment for the second attempted transaction had been released to Gomes and Zaftr learned that Gomes was a legal assistant at SOH, not a managing partner.

On November 14, 2020, Zaftr asked Defendants to return the $941,160.70 that they had

---

[3] This registry is maintained by an executive agency of the United Kingdom that incorporates and dissolves limited companies and registers company information to make it available to the public. *See Companies House*, GOV.UK, https://www.gov.uk/government/organisations/companies-house.

4

retained during the previous failed deals. Kirk refunded $36,687.45 but explained that the rest had either been delivered to BVFR or was being held for BVFR's benefit. BVFR refused to return any money.

On December 3, 2020, Smith contacted Zaftr via LinkedIn and WhatsApp, complaining that the funds Zaftr had sent were "incomplete." Zaftr later learned that the passport Lawrence had provided as proof of Smith's identity was fraudulent; that the James Smith represented in the passport does not exist; and that the photograph had been used in online dating scams.

In all, Zaftr paid $5,683,536.63 and never received a single Bitcoin.

## II.   LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[4] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

When analyzing a motion to dismiss, the Court must "construe the complaint in the light

---

[4] The same standard of review applies to the Kirk Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) as to the Lawrence Defendants' Motion for Judgment on the Pleadings pursuant to Rule 12(c), both of which raise the defense of failure to state a claim on which relief may be granted.

Because the Lawrence Defendants filed an Answer to the Complaint, they could not bring a motion to dismiss under Rule 12(b). *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1367 (3d ed. Apr. 2021 Update). However, Rule 12(h)(2) permits defendants to use a motion for judgment on the pleadings under Rule 12(c) to raise the defense of failure to state a claim, enumerated under Rule 12(b)(6). *Id*. Under these circumstances, courts evaluate the 12(c) motion under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991) ("Rule 12(h)(2) provides that a defense of failure to state a claim upon which relief can be granted may also be made by a motion for judgment on the pleadings. In this situation, we apply the same standards as under Rule 12(b)(6)"); Wright & Miller, *supra*, § 1367 ("The mere fact that these procedural defects are raised in the guise of a Rule 12(c) motion should not affect the manner by which the court determines what essentially are Rule 12(b) matters.").

most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Legal conclusions are disregarded, well-pleaded facts are taken as true, and it is determined whether those facts state a "plausible claim for relief." *Id*. at 210–11.

### III. DISCUSSION

#### A. Count III: Unjust Enrichment

Zaftr alleges that Defendants were unjustly enriched when they kept Zaftr's money without delivering any Bitcoin. Defendants counter that because Zaftr attached the relevant agreements to the Complaint and sought the same remedy for unjust enrichment as for breach of contract, the unjust enrichment claim arises out of the agreements and is therefore barred under Pennsylvania law.[5]

The doctrine of unjust enrichment imposes a duty on an individual or entity "in spite of the *absence* of an agreement when one party receives an unjust enrichment at the expense of another." *Hershey Foods Corp. v. Ralph Chapek*, Inc., 828 F.2d 989, 998 (3d Cir. 1987) (emphasis added) (quoting *Birchwood Lakes Cmty. Ass'n, Inc. v. Comis*, 442 A.2d 304, 308 (Pa. Super. 1982). In Pennsylvania, the doctrine of unjust enrichment does not apply if "the relationship between the parties is founded upon a written agreement or express contract." *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006).

At the pleading stage, this substantive common law rule must be reconciled with the Federal Rules of Civil Procedure, which allow plaintiffs to plead inconsistent claims in the

---

[5] By citing to Pennsylvania law in their motions, Defendants conceded that Pennsylvania law governs. *See* E.D. Pa. Civ. R. 7.1(c) ("Every motion . . . shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion.").

alternative. *See* Fed. R. Civ. P. 8(d). Plaintiffs are permitted to plead unjust enrichment in the alternative if there is some dispute as to the validity, enforceability, or applicability of the alleged contract.[6] *See, e.g.*, *Hollenshead v. New Penn Fin., LLC*, 447 F. Supp.3d 283, 293 (E.D. Pa. 2020) (plaintiff could not alternatively plead a claim for unjust enrichment because the parties did not contest the existence of a valid and enforceable written contract governing the issues in dispute); *Montanez v. HSBC Mortg. Corp.*, 876 F. Supp.2d 504, 515–16 (E.D. Pa. 2012) (same); *Cosby v. Am. Media, Inc.*, 197 F. Supp.3d 735, 744–45 (E.D. Pa. 2016) (permitting pleading in the alternative where the enforceability of the contract was disputed).

Essentially, if a valid contract governs the plaintiff's claims, alternative pleading would be implausible under *Iqbal* because Pennsylvania law will bar the plaintiff from recovering under a theory of unjust enrichment regardless of the merits of the breach of contract claim. *See Grudkowski v. Foremost Ins. Co.*, 556 Fed. App'x 165, 170 n.8 (3d Cir. 2014) (pleading an unjust enrichment claim in the alternative "is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy."). By contrast, when the facts pled raise questions about the validity, enforceability, or applicability of the contract, a plaintiff may have a plausible claim for both breach of contract and unjust enrichment. If the plaintiff later fails to establish that the contract governs certain claims, unjust enrichment may yet provide a remedy.

---

[6] Cases cited by Plaintiff are not to the contrary. In *United States v. Kensington Hosp.*, 760 F. Supp. 1120 (E.D. Pa. 1991), the unjust enrichment claim survived because the government argued that the contract "did not concern the allegedly fraudulent conduct." *Id.* at 1135. *In re Flonase Antitrust Litig.*, 692 F. Supp.2d 524 (E.D. Pa. 2010) interpreted *Arizona* law on this question. *Id.* at 543. Other cases to which Plaintiff refers provide no guidance because they did not analyze the application of Rule 8 to unjust enrichment claims. *See Broederdorf v. Bacheler*, 129 F. Supp.3d 182, 199 (E.D. Pa. 2015); *Sudofsky v. JDC Inc.*, No. 03-1491, 2003 WL 22358448, at *4 (E.D. Pa. Sept. 8, 2003).

Zaftr alleges, and Defendants concede, that express agreements govern the transactions underlying this suit.[7] However, the Complaint states—and the Exhibits to the Complaint confirm—that each Defendant did not sign every agreement. In particular, the Kirk Defendants did not sign the Sales Purchase Agreement or the ID Verification Agreement, and the Lawrence Defendants did not sign the Sales Purchase Agreement, the Escrow Agreement, or the Second Escrow Agreement.[8]

It would be premature to dismiss Plaintiff's unjust enrichment claim at the motion to dismiss stage, prior to discovery and briefing concerning whether Defendants are bound by contracts they did not sign. Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings will therefore be denied as to Count III.

### B. Count IV: Conversion

Zaftr alleges that Defendants converted the money that it sent to Defendants and SOH. Defendants contend that Plaintiff's conversion claim must be dismissed because: (1) cryptocurrency is not "chattel" under Pennsylvania law; and, (2) there is no recovery in tort when Plaintiff's rights are sufficiently protected under contract law (the "gist of the action" doctrine).

Few courts have yet considered whether cryptocurrency constitutes "chattel" for the

---

[7] The six agreements are: (1) the initial Sales Purchase Agreement for the purchase of 10,000 Bitcoin in tranches (Exhibit A); (2) an Escrow Agreement concerning fees, commissions, and Kirk's role (Exhibit B); (3) an Addendum to the Escrow Agreement governing the payment of BVFR's fee (Exhibit C); (4) the ID Verification Agreement containing Lawrence's representations about Smith (Exhibit D); (5) the Second Escrow Agreement, concerning the second attempted transaction (Exhibit E); and (6) an Addendum to the Second Escrow Agreement concerning the third attempted transaction (Exhibit F).

[8] Although Zaftr alleges that Kirk signed Exhibits B and E "as counsel and agent" for the Lawrence Defendants, it alleged no facts in support of this legal assertion concerning their agency relationship. The Complaint's conclusory legal assertion that Defendants are bound by the terms of all the agreements was not supported by any factual allegations and is properly disregarded. *Fowler*, 578 F.3d at 210–11.

purposes of a conversion claim.  However, it is not necessary to decide this question under Pennsylvania law because Plaintiff's claim is based on the alleged conversion not of Bitcoin, but of the money it paid to Defendants for Bitcoin that was never delivered.  Money may properly be the subject of a conversion claim.  *Pioneer Commercial Funding Corp. v. Am. Fin. Mortg. Corp.*, 855 A.2d 818, 827 n.21 (Pa. 2004).  Therefore, Plaintiff's conversion claim will not be dismissed on the basis of Defendants' first argument.

Turning to Defendants' second argument, the gist of the action doctrine "ensure[s] that a party does not bring a tort claim for what is, in actuality, a claim for a breach of contract." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 60 (Pa. 2014).  The "touchstone standard for ascertaining the true gist or gravamen of a claim" turns on the following analysis:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract.  If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id.* at 68–69.  Whether a duty arises under a contract is a fact-intensive inquiry, and it is appropriate to exercise caution when wielding the doctrine to dismiss tort claims at an early stage.  *See, e.g.*, *Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*, No. 11-4568, 2011 WL 6046923, at *8 (E.D. Pa. Dec. 6, 2011); *Orthovita, Inc. v. Erbe*, No. 07-2395, 2008 WL 423446, at *4 (E.D. Pa. Feb. 14, 2008).  Accordingly, the Court these claims will not dismiss.

As discussed above, the Kirk Defendants did not sign the Sales Purchase Agreement or

9

the ID Verification Agreement and the Lawrence Defendants did not sign the Sales Purchase Agreement, the Escrow Agreement, or the Second Escrow Agreement.  It is therefore plausible that Defendants have a duty to Plaintiff arising independently of the contracts governing the transactions and it would be premature to dismiss Zaftr's conversion claim at this stage.  Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings will be denied as to Count IV.

### C. Counts V & VI: Misrepresentations/Omissions

Under Pennsylvania law, a fraudulent misrepresentation claim has six elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

The purpose of Rule 9 is to "allow a defendant to meaningfully respond to a complaint." *In re Docteroff*, 133 F.3d 210, 217 (3d Cir. 1997).  Therefore, the plaintiff must "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)).  This standard requires the plaintiff to "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id*.  In other words, a

plaintiff must describe the "who, what, when, where, and how of the events at issue." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019).

As to knowledge, Zaftr alleges that all the Defendants were aware that "Smith was not the individual he was purported to be," that "Defendants lacked a seller of Bitcoin who could perform," and that the "Bitcoin would never be provided to Plaintiff."

Zaftr further alleges that Defendant Lawrence (whether fraudulently under Count V or negligently under Count VI): (1) "in presenting Smith's fraudulent passport and purporting to guarantee Smith's credentials, misrepresented Smith's identity and Smith's ability to perform under the agreements"; (2) represented that Lawrence had "fully vetted Gomes" and SOH; and, (3) represented that "Gomes was a managing partner at his firm, and that Gomes was the signatory on his firm bank account."

Reading the Complaint in the light most favorable to Plaintiff, it alleges that the Kirk Defendants made three misrepresentations: (1) "Lawrence, through Kirk, provided Zaftr with a copy of Smith's passport"; (2) "Kirk and Lawrence explained that the failure to provide the Bitcoin [in August 2020] was purportedly the result of a timing issue with another party in a separate transaction"; and, (3) "Kirk confirmed that Kirk supposedly had been involved in a prior transaction where Smith had allegedly delivered Bitcoin on short notice."

### i. The Lawrence Defendants

The Lawrence Defendants move for judgment on the pleadings under the gist of the action doctrine as to Plaintiff's Fraudulent and Negligent Misrepresentation claims. This Motion fails for the same reasons it failed against Plaintiff's conversion claim—the Lawrence Defendants were not signatories to all of the contracts and therefore the gist of the action

doctrine will not bar Plaintiff from pleading tort claims in the alternative at this stage. The Lawrence Defendants' Motion will be denied as to Count V (Fraudulent Misrepresentation/Omission) and Count VI (Negligent Misrepresentation/Nondisclosure).

### ii.  *The Kirk Defendants*

The Kirk Defendants challenge Count V (Fraudulent Misrepresentation/Omission) for failure to meet the pleading requirements of Federal Rule of Civil Procedure 9(b).[9]

The Kirk Defendants argue that the Complaint falls short of Rule 9 because "Plaintiff does not allege that Defendant Kirk engaged in the misrepresentation that was 'material' to Zaftr's participation" in the agreements, and the Complaint's allegation that "Defendants were aware that Smith was not the individual he was purported to be, and that Defendants lacked a Seller of [Bitcoin] who could perform" fails to allege details sufficient to put the Kirk Defendants on notice of the claim. In particular, the Kirk Defendants contend, the Complaint did not allege "the particular details of how the Kirk Defendants allegedly knew about Smith's identity, how the Kirk Defendants were involved in the vetting process, or that the Kirk Defendants, specifically, made any fraudulent misrepresentations at all." On reply, the Kirk Defendants add that Zaftr's third allegation does not contain sufficient detail, including "who was present, when the conversation took place, and how the conversation took place (i.e. electronically, in person, etc.)."

---

[9] In their Reply brief, the Kirk Defendants briefly and belatedly attempt to argue that the gist of the action doctrine precludes Zaftr's fraudulent misrepresentation and omission claim. This argument will not be considered because Defendants are precluded from raising new arguments on reply. *See Laborers' Int'l Union of N. Am. AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994); *United States v. Martin*, 454 F. Supp.2d 278, 281 n.3 (E.D. Pa. 2006). In any case, their gist of the action doctrine argument would fail for the same reasons as that of the Lawrence Defendants.

To the contrary, Zaftr's third factual allegation is sufficient to satisfy Rule 9 and state a claim for fraudulent misrepresentation.[10]  The Complaint alleges that: (1) "[a]t the same time" as Plaintiff's communications with Gomes about BBT's Bitcoin miner, over two months after the parties entered into their initial agreements; (2) after Zaftr had declared that it would make no additional payments and had made numerous demands for immediate delivery of the Bitcoin; (3) Kirk—knowing that Smith was not who he was purported to be, and knowing that *no* seller would deliver Bitcoin to Plaintiff—stated to Zaftr that he had been involved in a prior transaction with Smith—a person who does not exist—in which Smith delivered Bitcoin on short notice. This allegation contains the "who, what, when, where, and how" sufficient to put the Kirk Defendants on notice of the claim against them.

The Kirk Defendants' Motion to Dismiss Count V will be denied.

### D. Count VIII: RICO

RICO creates criminal and civil liability for "any person" who

> uses or invests income derived 'from a pattern of racketeering activity' to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a); who acquires or maintains an interest in or control of such an enterprise 'through a pattern of racketeering activity,' § 1962(b); who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs 'through a pattern of racketeering activity,' § 1962(c); or, finally, who conspires to violate the first three subsections of § 1962, § 1962(d).

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232–33 (1989); 18 U.S.C. § 1962.

---

[10] At this time, taking the factual allegations in the Complaint as true, the first and second misrepresentations that Zaftr alleges against the Kirk Defendants do not appear sufficient to state a claim under Rule 9.  However, Plaintiff may further develop these theories in discovery because its claim of fraudulent misrepresentation survives this motion to dismiss.

Zaftr alleges that Defendants associated together for the common purpose of inducing Zaftr to pay millions of dollars for a product that they never intended to deliver. Under this theory, Defendants had a "formal or informal organization" through which Lawrence would initiate deals by approaching buyers and falsely attesting to the seller's credentials, while Kirk prepared the agreement and acted as mandate counsel, receiving the buyer's funds on false promises of holding them in escrow, and disbursing the money to his fellow conspirators. Through this scheme, Zaftr alleges, Lawrence and Kirk knowingly participated in numerous acts of wire fraud in furtherance of their enterprise's objectives. Zaftr did not identify any victims of this alleged enterprise besides itself or any transactions besides those in which it participated.

To prevail on any of its RICO claims, Zaftr must allege a "pattern of racketeering activity" consisting of predicate acts that are (1) related and (2) pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. at 232–33, 239. Defendants challenge only the element of continuity. Continuity may be established by a "closed period of repeated conduct" (closed-ended continuity) or "past conduct that by its nature projects into the future with a threat of repetition" (open-ended continuity). *Id.* at 241.

Zaftr has not shown close-ended continuity. In the Third Circuit, a pattern that lasts less than twelve months cannot establish close-ended continuity. *Hughes v Consol-Pa. Coal Co.*, 945 F.2d 594, 611 (3d Cir. 1991). On its face, the Complaint alleges only four months of predicate acts and Zaftr's speculative assertions that the Defendants *may* have engaged in similarly fraudulent conduct prior to August 2020 do not do the job: "bald speculation is insufficient to state a plausible claim under *Iqbal* and *Twombly*." *Fantone v. Latini*, 780 F.3d 184, 195 (3d Cir. 2015).

Nor has Zaftr alleged open-ended continuity. Open-ended continuity exists if the specific facts of the case establish a "threat of continued racketeering activity." *H.J. Inc.*, 492 U.S. at 242. For example, a showing that the predicate acts "are part of an ongoing entity's regular way of doing business" may sufficiently establish a threat. *Id.*[11]

Precedents in this Circuit indicate that racketeering activity that is limited in purpose or scope will not constitute a "regular way of doing business." For example, in *Banks v. Wolk*, 918 F.2d 418 (3d Cir. 1990), Banks and his business partner, Wolk, contracted to sell Philadelphia's American Patriot Building, but Wolk colluded with the buyers to reduce the selling price and secure a 50% interest for himself. The panel held that Wolk's actions did not constitute a "regular way of doing business" because they "were directed solely" at this one transaction. *Id.* at 423. *See also Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 610 (3d Cir. 1991) (coal and railway companies' scheme to obtain land at low prices by threatening and deceiving landowners did not constitute a "regular way of doing business" because "Plaintiffs each had but one property to sell; defendants had but one area to acquire."); *Hindes v. Castle*, 937 F.2d 868, 874 (3d Cir. 1991) (fraudulent solicitation of campaign contributions achieved its purpose upon election of candidate, extinguishing any threat of continuing racketeering activity).

By contrast, allegations of racketeering activities extending beyond those for which the

---

[11] Prior to the Supreme Court's decision in *H.J. Inc.*, the Third Circuit articulated a list of six factors to guide courts in determining whether the plaintiff has shown a "pattern of racketeering activity." *Barticheck v. Fidelity Union Bank/First Nat'l State*, 832 F.2d 36, 38–39 (3d Cir. 1987) (listing "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity"). The Court later clarified that although these factors remain relevant after *H.J. Inc.*, they need not be considered in every case and are "are best viewed as analytical tools available to courts when the issue of continuity cannot be clearly determined under either a closed- or open-ended analysis." *Tabas v. Tabas*, 47 F.3d 1280, 1296 & n.21 (3d Cir. 1995). Given the lack of evidence supporting continuity here, it is unnecessary to consider these factors at this juncture.

plaintiff seeks relief may suffice to show a "regular way of doing business." For example, in *Banks*, the plaintiff's additional allegations that two buyers had perpetrated four other frauds through the same corporate entities adequately pled a "regular way of doing business." *Banks*, 918 F.2d at 424. In *Swistock v. Jones*, 884 F.2d 755 (3d Cir.1989), the complaint focused on defendants' misrepresentations concerning the condition of real estate they leased to plaintiffs. The Third Circuit held that plaintiffs' further allegations of misrepresentations concerning *other* potential transactions with plaintiffs were "not inconsistent with proof that defendants regularly conducted their business via predicate acts of racketeering" and reversed the dismissal of the RICO claims. *Id.* at 759 (internal citation omitted). *See also Schroeder v. Acceleration Life Ins. Co. of Pa.*, 972 F.2d 41 (3d Cir. 1992) (allegations that an insurance company had defrauded thousands of customers out of benefits sufficed to show a "regular way of doing business" at summary judgment stage).

Reading the Complaint in the light most favorable to Plaintiff, the predicate acts alleged here were "directed solely" at inducing Zaftr to make repeated financial transfers to Defendants. Zaftr has not pled any facts regarding Defendants' regular business activities, apart from its own unconsummated transactions with them. Furthermore, once Zaftr refused to send any additional funds to Defendants, there could be no threat of repeat fraud against Zaftr.

As the Complaint does not plead a "pattern of racketeering activity," it has not stated a claim under any of the four subsections of 18 U.S.C. § 1962 and Plaintiff's RICO claim will be dismissed in its entirety, with leave to amend.[12]

---

[12] In light of this holding, Defendants' other arguments, including that Zaftr did not plead its RICO claims with sufficient particularity under Rule 9 and did not articulate a separate injury under Sections 1962(a) or 1962(b), need

An appropriate order follows.

**BY THE COURT:**

/s/Wendy Beetlestone, J.

---
**WENDY BEETLESTONE, J.**

---

not be considered at this juncture.